**E-Filed 7/17/2007**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

TRENT WEST,

Plaintiff,

v.

JEWELRY INNOVATIONS INC., et al.,

Defendants.

Case Number C 07-1812 JF

ORDER[1] DENYING PRELIMINARY INJUNCTION

[re: docket no. 22]

Plaintiff, Trent West, moves for a preliminary injunction against Defendants Jewelry Innovations, Inc. ("Jewelry Innovations"), Tosyali International, Inc. ("Tosyali"), Northstar Diamond, Inc. ("Northstar"), Crown Rings, Inc. ("Crown Rings"), and A. Jamis Designs, Inc. ("A. Jamis") prohibiting Defendants from selling tungsten carbide rings within the United States in violation of Plaintiff's United States patent rights. Plaintiff has withdrawn his request for preliminary injunction against Tosyali and A. Jamis, acknowledging that these Defendants do not

[1] This disposition is not designated for publication and may not be cited.

import tungsten carbide rings. The Court heard oral argument on the motion on July 13, 2007. Having considered the facts and arguments, the Court will deny the motion as to Jewelry Innovations, Northstar, and Crown Rings.

## I. BACKGROUND

Plaintiff is the holder of seven patents directed to tungsten carbide rings and methods for making tungsten carbide rings, including U.S. Patent Nos. 6,062,045 ("the '045 patent"), 6,553,667 ("the '667 patent"), 6,928,734 ("the '734 patent"), 6,990,736 ("the '736 patent"), 6,998,842 ("the '842 patent"), 7,032,314 ("the '314 patent"), and 7,076,972 ("the '972 patent"). Plaintiff manufactures tungsten carbide rings through his company Trent West, Inc. ("TWI") which currently is the sole licensee of Plaintiff's U.S. patents. TWI first sold its tungsten carbide rings in 2000. Plaintiff alleges that at this time no other tungsten carbide rings were available on the market. Plaintiff alleges that his rings were very successful on the market and that TWI sold 700 rings in the last half of 2000, 2,400 rings in 2001, and 6,200 rings annually by 2004. According to Plaintiff, "Mr. West was acclaimed and recognized within the jewelry industry as the inventor and developer of the tungsten carbide ring market." Memorandum in Support of Motion for Preliminary Injunction, pg. 2.

Plaintiff alleges that he became aware of infringement by competitors in late 2002. According to Plaintiff, by 2005 the competition caused sales of tungsten carbide rings by TWI to decrease from sales in 2004, even though the overall market for tungsten rings was growing. By 2006, TWI sales were down 80 percent. To date in 2007, TWI's sales of tungsten rings are even further depressed. As a result Plaintiff suffered a significant loss of income and TWI has laid off a significant portion of its workforce.

Defendants are jewelry manufactures and distributers. Jewelry Innovations is a Utah Corporation. Northstar is a Minnesota Corporation that, among other things, is a wholesaler of jewelry. Crown Ring is a Canadian company that manufactures and sells jewelry, including rings, throughout United States and Canada.

Plaintiff alleges that Defendants import their tungsten carbide rings from China. Plaintiff alleges that he attempted to ascertain from Defendants whether they were importing infringing

rings by written inquiries dated April 6, 2007 and that Defendants did not reply. Plaintiff further alleges that he contacted manufacturers of tungsten carbide rings in China but that these manufacturers would not disclose the identities of their clients. Finally, Plaintiff alleges that he contacted United States manufacturers of blanks for tungsten carbide rings to determine if any of the Defendants were securing rings domestically. Plaintiff alleges that he discovered that the U.S. manufacturing companies largely had ceased to manufacture blank tungsten rings.

Jewelry Innovations admits that it imports its rings from China. Northstar admits that it promotes a line of jewelry that contains some quantity of tungsten carbide but does not state from where, if at all, it imports this line of jewelry Crown Ring states that it purchases pre-made ring bodies or "washers" from a European distributor; the jewelers at Crown Ring's shop in Montreal create the rings according to unique designs.

Plaintiff alleges that the Defendant's infringe the '314 patent and specifically claim 1 which claims:

> 1. A method of making a jewelry ring which comprises:
>
> providing an annular finger ring made of a hard material consisting essentially of tungsten carbide, with the annular ring having at least one external facet and defining an aperture configured and dimensioned to receive a person's finger; and
>
> grinding the at least one external facet to a predetermined shape to provide a pleasing appearance to the jewelry ring, with the hard material being long wearing and virtually indestructible during the jewelry ring.

## II. LEGAL STANDARD

Plaintiff brings his motion for preliminary injunction pursuant to Rule 65 of the Fed. R. Civ. P. and the Patent Act, 35 U.S.C. § 283. Because the issuance of an injunction in a patent case "enjoins the violation of any right secured by a patent," it involves substantive matters of patent law, and thus is governed by Federal Circuit precedent. *E.g., Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451 & n.12 (Fed. Cir. 1988). However, for purely procedural questions or questions of law not exclusively assigned to the Federal Circuit, the law of the regional circuit is applied. *See, e.g. Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir.

1990) (applying Ninth Circuit law).

A preliminary injunction is a "drastic and extraordinary remedy, not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech. Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). It should rarely be granted simply on affidavits alone, and should not be granted based upon conclusory statements in the Plaintiff's affidavit. *Atari Games*, 897 F.2d at 1575. The four well recognized factors that a Court should review when deciding whether to enter a preliminary injunction are:

> 1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted, 3 the balance of hardships favoring the plaintiff, and 4) advancement of the public interest.

*Id.* at 1575 (citing *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co. Inc.,* 526 F.2d 86, 87 (9th Cir. 1975)). In order to establish likelihood of success on the merits, a plaintiff must show that, in light of the presumptions and burdens that will exist at trial, (a) defendants likely infringe on the patent, and (b) the claims of the patent will likely withstand any challenges to validity. *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005). "Thus, once the non-movant has raised a substantial question as to infringement or validity, for the preliminary injunction to issue, the movant must prove that this question lacks substantial merit." *Aventis Pharmaceuticals, Inc. v. Barr Labs., Inc.*, 411 F. Supp. 2d 490, 494 (D.N.J. 2006).

To determine infringement, the Court normally undertakes a two-step process, first determining the scope of the claims at issue, and then comparing the properly construed claim with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001). With respect to validity, a defendant need only make a showing that the patent is "vulnerable" to avoid a preliminary injunction; it does not need to prove invalidity by clear and convincing evidence as at trial. The patentee, however, must make a "clear case" for supporting the validity of the patent. *Id.*

Finally, because Defendants allegedly import their products and because Plaintiff has sent Defendants a formal inquiry concerning their products, Plaintiff asserts that the instant case is

subject to 35 U.S.C. §295. Section 295 states:

> In actions alleging infringement of a process patent based on importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds–
>
> (1) that a substantial likelihood exists that the product was made by the patented process; and
>
> (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine,
>
> the product shall be presumed to have ben so made, and the burden of establishing that the product that the product was not so made by the process, shall be on the party asserting that it was not so made.

## III. DISCUSSION

Under 35 U.S.C. §295, a patentee of a process patent first must prove that there is a substantial likelihood that the products were made by the patented process, and second must prove that it made a reasonable effort to determine the process but could not. When these two conditions are met, the burden shifts the alleged infringer to disprove infringement. *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. ITC*, 224 F.3d 1356, 1359 (Fed. Cir. 2000).

### A. Whether the products were made by the patent process

Plaintiff argues that because Defendants import "an annular finger ring made of a hard material consisting essentially of tungsten carbide" Plaintiff has met his burden of establishing infringement under section 295. Defendants argue that such a conclusory statement is insufficient to satisfy Plaintiff's burden under section 295. Defendants point out that Plaintiff has not identified any particular products that are considered to infringe or utilize an infringing process. Indeed, Defendants Jewelry Innovations and Northstar argue that their products do not infringe claim 1 of the '314 patent, with or without the presumption of section 295.

In order for a patent to be literally infringed, "every element of the invention as claimed [must be] present in the accused device." *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1080 (Fed. Cir. 2003). In assessing infringement, the scope of the claims is to be interpreted in view of the specification and the prosecution history. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-980 (Fed. Cir. 1995).

Here, claim 1of the '314 patent describes a jewelry ring "consisting essentially of" tungsten carbide. The Federal Circuit has stated that "with respect to a 'consisting essentially of' claim, there is no infringement where the accused product contains additional, unclaimed ingredients that materially affect the basic and novel properties of the invention." *Yoon Ja Kim v. Conagra Food, Inc.,* 465 F.3d 1312, 1320 (Fed. Cir. 2006).

While section 295 does create a burden-shifting effect, it is clear from the legislative history that the rebuttable presumption of infringement under section 295 is not one that can be "casually established." *See* H.R. Rep. No. 100-60, at 17. Rather, "the plaintiff is expected to set forth facts . . . which form the basis for a reasonable belief that the product was made using the patented process." *Id.* at 16-17; *see also Aventis*, 411 F. Supp. 2d at 510. "A patentee might show that the patented process was the only known method, or the only commercially practical method, for producing the product, or the that physical evidence, such as the exact chemical composition of the product, indicates the use of the patent process." S.Rep. No. 100-83, at 45 (1987); *Aventis*, 411 F. Supp. 2d. at 510.

While the Federal Circuit has not addressed the issue of what type of proof is sufficient under section 295, a number of district courts have. For example, *Aventis* involved a drug process patent in which plaintiffs provided two expert opinions that the presence of a chemical in defendant's product samples was evidence that the defendants were using the patented process to manufacture their drug, reasoning that the particular chemical marker would not have been found in a sample if it had been made by the non-patented process. *Id.* at 510. The district court found that evidence to be insufficient, noting that "Congress intended that a plaintiff present more persuasive evidence of likelihood of using the infringing process than Plaintiffs have offered." *Id.* at 512. Other courts similarly have refused to apply the section 295 presumption under similar circumstances. *See Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 1996 WL 621837 (D. Del. 1996); *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 240 F. Supp. 2d 963 (S.D. Iowa 2003) rev'd in part on other grounds by *Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 93 Fed. Appx. 225 (Fed. Cir. 2004).

In this case, Plaintiff argues that he holds the base patent on tungsten carbide rings and

that claim 1 of the '314 patent covers all rings that contain tungsten carbide. Essentially, Plaintiff argues that *any* ring made from tungsten carbide will infringe claim 1 and that, since Defendants' products contain tungsten carbide, he has made a sufficient showing to that effect under section 295. However, Plaintiff has not offered any evidence that the rings sold by Defendants in fact consist essentially of tungsten carbide or use the process claimed by the '314 patent. In fact, Plaintiff has offered no evidence demonstrating the specific composition of Defendants' rings or to the process by which the rings were made. Moreover, during prosecution of the '314 patent, Plaintiff distinguished his product from others "based on superior inventive methods." Plaintiff has not shown that Defendants' products were not produced by other, presumably inferior, methods.

**B. Whether a reasonable effort was made to determine the alleged infringing process**

The second requirement that Plaintiff must meet under section 295 is that he proves "he has made reasonable effort to determine that the patented process was actually used in the production of the product and was unable so to determine." 35 U.S.C. § 295(2). Section 295 was created to provide relief to plaintiffs against manufacturers and importers who reside beyond the reach of the United States discovery mechanism. H.R. Rep. No. 60 at 16 (noting that the presumption is limited to "those cases where the manufacture is not subject to discovery under the Federal Rules of Civil Procedure"); *accord* S.Rep. No. 83 at 51 ("this presumption addresses the great difficulties a patent [sic] may have in proving that the patented process was used in the manufacture of the product in question where the manufacturer is not subject to service of process in the United States.") The Federal Circuit has noted that "[t]he statute also has a significant punitive element. It provides the trial court with a potent weapon to use against an non-cooperative defendant." *Nutrinova*, 224 F.3d at 1360. However, the plaintiff must attempt to engage in discovery and make a serious attempt at discovering the process. *See id.*

Here, Plaintiff's only effort in this regard was to send a letter to the Defendants. Plaintiff has not done any testing of the Defendants' products to ensure that they consist essentially of tungsten carbide. All of the Defendants against whom an injunction is sought are located in the

United States and are subject to the Federal Rules of Civil Procedure and this Court's jurisdiction. Plaintiff's failure to pursue any discovery in this case or to provide any tests or evidence of infringement is fatal to the instant motion. Sending a letter of inquiry to each of the Defendants simply is not enough to satisfy the requirements of section 295.

## IV. CONCLUSION

Because Plaintiff has relied solely on section 295 to establish that Defendants' products have been made in violation of claim 1 of the '314 patent, and because he has failed to meet the requirements of the statute, Plaintiff's motion for preliminary injunction is DENIED.

IT IS SO ORDERED.

DATED: July 17, 2007

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Brett D. Ekins bekins@joneswaldo.com, lcheney@joneswaldo.com

Edward Vincent King , Jr evking@kingandkelleher.com, mjhiggins@kingandkelleher.com

Notice will be delivered by other means to:

Smadar Dahan
8290 St Laurent Boulevard
Montreal, Quebec
H2P 2L8
Canada