*E-FILED 2/25/2008*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRENT WEST,<br><br>    Plaintiff,<br>  v.<br><br>JEWELRY INNOVATIONS, INC., TOSYALI INTERNATIONAL, INC. (d.b.a. BENCHMARK), DIAMOND NORTHSTAR, INC., (d.b.a. TUNGSTEN MAGNUM), A JAMAIS DESIGNS, INC. (d.b.a. INFINITY RINGS), and CROWN RING, INC.,<br><br>    Defendants. | No. C07-01812 JF (HRL)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANT CROWN RING, INC. TO PRODUCE A FED.R.CIV.P. 30(b)(6) WITNESS; AND (2) DENYING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>**[Re: Docket Nos. 120, 121]** |

Plaintiff Trent West moves to compel defendant Crown Ring, Inc. ("Crown Ring") to designate a witness to testify on its behalf pursuant to Fed.R.Civ.P. 30(b)(6). West also filed a related motion for sanctions. Having considered the moving and responding papers, as well as the arguments presented at the January 29, 2008 hearing, this court grants in part and denies in part the motion to compel and denies the motion for sanctions.

**I. BACKGROUND**

This is an action for alleged patent infringement brought against five defendants in the jewelry business. Plaintiff says that he is the inventor, patentee and owner of the four patents-in-suit pertaining to methods and processes for creating tungsten carbide finger rings. He contends that defendants are selling or offering to sell infringing rings.

On November 19, 2007, West deposed defendant Crown Ring, which designated Thierry Bellisha (identified as its chief of production and sales) to testify on its behalf. Plaintiff contends that Bellisha was ill-prepared to testify. He moves to compel Crown Ring to produce a prepared witness for a further Fed.R.Civ.P. 30(b)(6) deposition. He also seeks monetary sanctions for Crown Ring's alleged failure to produce a qualified witness the first time around. Crown Ring argues that it was prepared to testify at the deposition, but that plaintiff's examination was unreasonable in several respects.

## II. LEGAL STANDARD

Under Fed.R.Civ.P. 30(b)(6), a notice for the deposition of an entity "must describe with reasonable particularity the matters for examination." If the notice sufficiently describes the subjects for examination, then the entity to be deposed "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . ." FED.R.CIV.P. 30(b)(6). "The persons designated must testify about information known or reasonably available to the organization." *Id*. The corporate designee need not have personal knowledge of the noticed subjects of examination. However, "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996).

## III. DISCUSSION

Turning now to the particular matters in dispute, the court rules as follows:

**A. <u>Identity of Crown Ring's Customers (Topic Nos. 13 and 14)</u>**

<u>Topic No. 13</u>: Every individual or entity in the United States to whom Crown Ring sells or has sold the accused rings.

<u>Topic No. 14</u>: The identity of all outlets through which Crown Ring has offered for sale or sold the accused rings in the United States.

Plaintiff contends that Bellisha was not sufficiently prepared to testify about these topics because, while Crown Ring says that it has fifty or so customers of the accused rings, Bellisha

2

was able to identify only a few of them by name. Crown Ring contends that plaintiff unreasonably demanded that it commit to memory the names of all of its customers.

"Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide." *United States ex rel Fago v. M&T Mortgage Corp.*, 235 F.R.D. 11, 25 (D. D.C. 2006) (concluding that the corporate designee would not be required to memorize hundreds of loan numbers). Nevertheless, in this instance, it was not unreasonable for plaintiff to expect Crown Ring to be prepared to testify about all of its customers of tungsten carbide rings. While Bellisha testified that he was the most knowledgeable at the company on the noticed topic, he evidently assumed that plaintiff would simply name companies and have him confirm whether or not they are customers. (*See* Trojan Decl., Ex. 2 at 87:18-88:25).

Crown Ring points out that Bellisha traveled from Canada for the deposition and that it offered, at the deposition, to produce documents identifying its customers (an offer which plaintiff apparently refused). It argues that the information could have been obtained more efficiently through document requests or interrogatories, but that plaintiff unreasonably did not serve any such discovery before proceeding with the deposition.

It may well be that the examination on these topics would have been more productive if plaintiff had first proceeded with document requests or interrogatories. Nevertheless, he generally is free to proceed with depositions first if he so chooses. He is also entitled to explore information in deposition; and, plaintiff indicated at the motion hearing that he contemplates follow-up examination as to additional customers that are identified.

Accordingly, plaintiff's motion as to Topic Nos. 13 and 14 is granted as follows: Crown Ring shall appear for a further deposition as to these topics. However, the further examination will be limited to (a) one hour or (b) however much time plaintiff has left under the presumptive seven-hour limit (Fed.R.Civ.P. 30(d)(1)) – whichever is longer. The deposition shall take place at a location convenient to Crown Ring. Before the deposition is resumed, Crown Ring shall produce to plaintiff documents sufficient to identify all customers of the accused rings.

**B.     Crown Ring's Internet Sales (Topic No. 15)**

> Topic No. 15: All facts relating to any Internet web-site that Crown Ring is using, has used, or is planning to use, to advertise, market, sell, or offer for sale the accused rings in the United States or that is used by any retailer or other party to do so on Crown Ring's behalf.

Plaintiff contends that Bellisha was unprepared to testify about whether Crown Ring collaborates with some of its customers to put Crown Ring information on customers' websites. Crown Ring disagrees. The pertinent testimony indicates that Crown Ring apparently has discussed the issue with customers, but does not know whether those customers actually proceeded with their plans. It further testified that it would help if a customer were to ask for it, but that it has no relationship with any customer with respect to Crown Ring information (if any) on their websites. Having reviewed the pertinent testimony, this court concludes that Crown Ring's answer was sufficient. (Trojan Decl., Ex. 1 at 47:14-48:19). Accordingly, plaintiff's motion to compel a further deposition of Crown Ring on this matter is denied.

**C.     Crown Ring's First U.S. Sales of Tungsten Carbide Rings**

Plaintiff contends that Bellisha could only testify that he thought Crown Ring's first U.S. sales started in September 2006. He argues that Crown Ring's approximated date is insufficient and that a further deposition therefore is required. Crown Ring argues that this issue was not identified in plaintiff's deposition notice, but that it sufficiently answered the question in any event. Having reviewed the pertinent testimony, this court concludes that Crown Ring's answer was sufficient. (*See* Trojan Decl., Ex. 1 at 10:20-11:6; Ex. 2 at 89:22-90:2, 90:8-25). Plaintiff's motion to compel a further deposition of Crown Ring on this topic is denied.

**D.     Crown Ring's Sales and Cost Information (Topic No. 33)**

> Topic No. 33: Crown Ring's sales figures and cost information, on at least a quarterly basis, relating to each of the accused rings, including but not limited to: cost to Crown Ring per unit; sales price per unit; total sales by units; total sales by dollars; gross profits; net profits; and operating margins.

Plaintiff contends that Crown Ring failed to prepare Bellisha to testify sufficiently as to its quarterly sales figures. Crown Ring argues that Bellisha is the most knowledgeable person

4

as to its U.S. sales. It further contends that, although plaintiff unreasonably demanded exact sales figures, Bellisha made every effort to provide the information (i.e., by calling his office to obtain the figures during the deposition).

The transcript indicates that Bellisha is involved in all U.S. sales. He said that he saw his sales figures and evidently was prepared to give estimates on an annual, not quarterly, basis based on his belief that Topic No. 15 called for "at least" quarterly information if annual information was not available. (*See* Trojan Decl., Ex. 2 at 91:1-92:18, 97:24-103:21, 120:10-121:25). While it is true that Bellisha said that he did not review Crown Ring's sales information on his computer, Crown Ring could not reasonably be expected to commit to memory the exact sales figures (per unit; in dollars, gross profits; net profits; and operating margins) apparently sought. *See M&T Mortgage Corp.*, 235 F.R.D. at 25 ("Although Rule 30(b)(6) requires a designated witness to thoroughly educate him or herself on the noticed topic, there must be a limit to the specificity of the information the deponent can reasonably be expected to provide."). Although Bellisha apparently was not able to provide answers in as much detail as plaintiff would have liked, the court does not find that he was so unprepared that his testimony was tantamount to a non-appearance. Accordingly, plaintiff's motion to compel a further deposition of Crown Ring on this topic is denied.

**E.     Preparation of Blanks**

Plaintiff contends that Crown Ring was unable to testify about how blanks are prepared. He does not accept Crown Ring's testimony that it has no responsive information in its possession, custody or control; and, he seems to suggest that Crown should have contacted third parties to educate itself as to the process. For its part, Crown Ring argues that the preparation of blanks was not identified as a topic of examination in plaintiff's deposition notice. Nevertheless, it says that it sufficiently answered all of plaintiff's questions based on information available to it.

Generally, "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation."

*See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996). Here, however, Crown Ring's testimony indicates that it is not involved in the preparation of blanks and has never had any knowledge about how they are prepared. (*See* Trojan Decl., Ex. 1 at 27:6-14, 27:23-28:6, 29:18-30:16, 67:22-25). At the motion hearing, plaintiff expressed a particular interest in information about the composition of the blanks – e.g, whether Crown Ring has specifications for the percentage of tungsten for the blanks it buys. He contends that this is information which he needs to support his infringement claims. However, Crown Ring testified that it specifies only the size of the blanks it orders. (*See id*. at 30:2-5). At oral argument, Crown Ring's counsel reiterated that Crown Ring simply purchases the blanks as offered by an independent supplier and further represented that the composition information plaintiff seeks is the trade secret of its supplier.

The court is unpersuaded that Fed.R.Civ.P. 30(b)(6) requires the company to go out and obtain knowledge which it apparently never had in the first place. Plaintiff's motion for further deposition as to this matter is denied.

**F.** **Alleged Invalidity/Unenforceability re the Patents in Suit (Topic Nos. 17, 19-23)**

Topic No. 17: Any legal opinions or analyses, written or oral, received by Crown Rings pertaining to the accused rings or West's patents-in-suit, and any actions taken by Crown Rings in reliance thereon.

Topic No. 19: The facts upon which Crown Rings bases its claim that the '734 patent is invalid.

Topic No. 20: The facts upon which Crown Rings bases its claim that the '734 patent is unenforceable.

Topic No. 21: The facts upon which Crown Rings bases its claim that the '736 patent is invalid.

Topic No. 22: The facts upon which Crown Rings bases its claim that the '314 patent is invalid.

Topic No. 23: The facts upon which Crown Rings bases its claim that the '972 patent is invalid.

Crown Ring reportedly has asserted counterclaims for unenforceability and invalidity as to the patents in suit. Plaintiff contends that Crown Ring was not prepared to testify about the legal opinions it has received or the bases for its contentions in this lawsuit. For its part, Crown

Ring argues that plaintiff unreasonably required it to take a legal position with respect to invalidity and unenforceability of the patents in suit. It argues that such information is more appropriately discovered through contention interrogatories and is, in any event, inappropriate for examination of a lay witness.

With respect to Topic No. 17, plaintiff says that Crown Ring was unable to verify whether it had obtained any legal opinions re patent unenforceability (as opposed to invalidity). Bellisha confirmed that Crown Ring had obtained two legal opinions on patent invalidity. Although he said that he did not understand what patent unenforceability meant, he ventured to guess that Crown Ring did not obtain a legal opinion about it. (Trojan Decl., Ex. 1 at 49:2-51:14). Perhaps Crown Ring should have been able to give a more definitive answer as to whether or not it had an opinion on patent unenforceability. Nevertheless, that issue is now moot – at the motion hearing, Crown Ring's counsel represented to the court that the two opinions Crown Ring has obtained pertain only to invalidity. He further represented that, at this time, Crown Ring has no facts as to unenforceability (i.e., inequitable conduct before the U.S. Patent & Trademark Office).

As for Topic Nos. 19-23, plaintiff argues that he seeks only the factual basis for Crown Ring's contentions. He argues that Bellisha was not prepared to testify about these matters and maintains that Crown Ring must therefore submit to further examination. The deposition transcript indicates that Bellisha read the patents-in-suit at some point during the year, and then reviewed some of them (or portions of them) the day before his deposition. He also reviewed Crown Ring's Preliminary Invalidity Contentions, but did not understand all of it. He further testified that the patent claims re tungsten carbide are nothing new because of known processes for inlaying gold into platinum. (*See* Trojan Decl., Ex. 1 at 19:18-20:5; 128:1-133:20; 134:1-136:19). Crown Ring says that these topics are otherwise a subject for expert testimony.

Although Topic Nos. 19-23 ostensibly seek factual information about the patents-in-suit, it is not clear precisely what further "factual" queries plaintiff intends to make. Nevertheless, on this point, *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, *Inc.* 134 F.R.D. 275 (N.D. Cal.), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991), is persuasive. This court agrees

that "[i]n a patent case like this, the bases for contentions do not consist exclusively of relatively straightforward facts or evidence, as might be true, by contrast, in a case arising out of a traffic accident" and that "a substantial part of 'the bases for contentions' really consists of *quasi-legal argument*." *Id*. at 287. To be sure, plaintiff is entitled to learn the bases for Crown Ring's contentions. But he has not managed to convince that another Fed.R.Civ.P. 30(b)(6) deposition is the appropriate or efficient means of obtaining it. *Id.* Accordingly, plaintiff's motion for further deposition on these topics is denied.

**G.     Plaintiff's Motion for Sanctions**

Under the circumstances presented here, the court concludes that no sanctions are warranted. Plaintiff's motion for sanctions therefore is denied.

IT IS SO ORDERED.

Dated:   February 25, 2008

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:07-cv-1812 Notice has been electronically mailed to:**

Marc N. Bernstein mbernstein@blgrp.com, gvazquez@blgrp.com, rbowen@blgrp.com

Brett D. Ekins bekins@joneswaldo.com, lcheney@joneswaldo.com

Edward Vincent King , Jr evking@kingandkelleher.com, mjhiggins@kingandkelleher.com

Andrew H Stone astone@joneswaldo.com

Raymond Joseph Trojan trojan@trojanlawoffices.com, carr@trojanlawoffices.com, crucillo@trojanlawoffices.com, dang@trojanlawoffices.com, kim@trojanlawoffices.com, speier@trojanlawoffices.com, Trojanlaw@aol.com

Brent T. Winder bwinder@joneswaldo.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.