1  Brett D. Ekins (CSB #194736)
   Andrew H. Stone (*pro hac vice*)
2  Brent T. Winder (*pro hac vice*)
   JONES WALDO HOLBROOK & McDONOUGH PC
3  301 North 200 East, Suite 3A
   St. George, Utah 84770
4  Telephone: (435) 628-1627
   Facsimile: (435) 628-5225
5  bekins@joneswaldo.com

6  FOLGER LEVIN & KAHN LLP
   Michael F. Kelleher (CSB #165493) mkelleher@flk.com
7  Anne W. Kuykendall (CSB #248720) akuykendall@flk.com
   Embarcadero Center West
8  275 Battery Street, 23rd Floor
   San Francisco, CA 94111
9  Telephone: (415) 986-2800
   Facsimile: (415) 986-2827

10

11 *Attorneys for Defendants and Counterclaimants*
   *Jewelry Innovations, Inc. and Tosyali International, Ltd.*

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14 TRENT WEST,
                                          Case No. C 07 1812 EDL
15            Plaintiff,
                                          **JEWELRY INNOVATIONS, INC. AND**
16 vs.                                    **TOSYALI INTERNATIONAL, LTD.'S**
                                          **[PROPOSED] AMENDED PRELIMINARY**
17 JEWELRY INNOVATIONS, INC.,             **INVALIDITY CONTENTIONS**
   TOSYALI INTERNATIONAL, INC. (dba
18 BENCHMARK), DIAMOND
   NORTHSTAR, INC. (dba TUNGSTEN
19 MAGNUM), and A JAMAIS DESIGNS,
   INC. (dba INFINITY RINGS); and CROWN
20 RINGS, INC.,

21            Defendants.

22
   ────────────────────────────────
   AND RELATED COUNTERCLAIMS.
23

24         Defendants Jewelry Innovations, Inc. ("JII") and Tosyali International, Ltd. dba

25 Benchmark ("Benchmark") (collectively "Defendants"), through undersigned counsel of record,

26 and pursuant to Patent L.R. 3-3, hereby make the following Amended Preliminary Invalidity

27 Contentions for U.S. Patent No. 7,076,972; U.S. Patent No. 6,928,734; U.S. Patent No.

28

6,990,736; and U.S. Patent No. 7,032,314 (collectively the "Patents").  Concurrently herewith, Defendants produce the required documents under Patent L.R. 3-4(b).

By providing these Amended Preliminary Invalidity Contentions, Defendants do not waive any applicable privilege or immunity, including the attorney-client privilege, work product doctrine, or joint defense privilege.  Defendants predicate the Amended Preliminary Invalidity Contentions, in part, on the Court's claim construction order dated April 10, 2008, statements made at oral arguments (*i.e.*, that Plaintiff's patents cover *all* tungsten carbide rings), and Plaintiff's Disclosures of Asserted Claims and Preliminary Infringement Contentions.  Moreover, Defendants base the Amended Preliminary Invalidity Contentions on information reasonably available to them at this time, and reserve the right to seek leave to amend the contentions should new information be brought to their attention.

## I.      Patent L.R. 3-3(a).

Defendants identify the following items of prior art that either anticipate or render obvious the Asserted Claims of the Patents ("References").

|     | Short Name/Title/Item | Reference | Issue/Publication Date/Date |
|-----|-----------------------|-----------|------------------------------|
| 1.  | Krope                 | U.S. Design Patent No. D53,040 | 10/1917 |
| 2.  | Bacharach             | U.S. Patent No. 1,327,606 | 1/1920 |
| 3.  | Grossman              | U.S. Patent No. 1,431,652 | 10/1922 |
| 4.  | Croselmire            | U.S. Patent No. 1,537,068 | 5/1925 |
| 5.  | Brogan                | U.S. Patent No. 1,863,618 | 6/1932 |
| 6.  | Bager                 | U.S. Patent No. 2,050,253 | 8/1936 |
| 7.  | Wittmayer             | U.S. Design Patent No. D113,692 | 5/1939 |
| 8.  | Frackman              | U.S. Design Patent No. 137,743 | 3/1944 |
| 9.  | Brioux                | U.S. Patent No. 2,747,259 | 5/1956 |
| 10. | Hawke                 | Aus. Patent No. 208,883 | 8/1956 |

- 2 -

| 11. | General Electric Carboloy Die Catalog and rings[1] | | 1960 |
| 12. | Lederrey | GB950127 | 2/1964 |
| 13. | Lederrey | U.S. Patent No. 3,242,664 | 3.1966 |
| 14. | Iler | U.S. Patent No. 3,669,695 | 6/1972 |
| 15. | Eberle | U.S. Patent No. 3,712,079 | 1/1973 |
| 16. | Flanagan | U.S. Patent No. 3,719,479 | 3/1973 |
| 17. | Daniels et al. | U.S. Patent No. 3,776,706 | 10/1973 |
| 18. | Fujimora | U.S. Patent No. 3,837,163 | 9/1974 |
| 19. | Morita | JP59-076801 | 5/1984 |
| 20. | Bonjour et al. | U.S. Patent No. 4,574,011 | 3/1986 |
| 21. | Nippon Tungsten | JP61-177351 | 8/1986 |
| 22. | Gogniat | U.S. Patent No. 4,740,935 | 4/1988 |
| 23. | Maruyama et al. | JP64-008245 | 1/1989 |
| 24. | Lawrence Stanley tungsten carbide bushing or guide ring modified for use as a finger ring | | 1991 |
| 25. | Oganesyan | U.S. Patent No. 5,003,678 | 4/1991 |
| 26. | Yillik Precision Industries, Inc. Catalog | | 1992 |
| 27. | Kennametal specialty carbide | | 1995 |

[1] The industrial tungsten carbide rings sold by the likes of General Electric and other companies are identical to some of the tungsten carbide rings Plaintiff asserts are covered by the claims of the Patents. Not only do these rings, combined with certain patents, as discussed below, render Plaintiff's Asserted Claims obvious, but the on-sale date of these rings appears to predate the Patents by decades. If this is the case, Plaintiff's claims are invalidated under 35 U.S.C. 102(b). Defendants do not waive the right to supplement these contentions once an on-sale date is verified. Nevertheless, Defendants identify the information it has at this time for these invalidity contentions.

- 3 -

| | products | | |
|---|---|---|---|
| **28.** | Lampert et al. | U.S. Patent No. 5,431,028 | 7/1995 |
| **29.** | Pasquetti | U.S. Patent No. 5,678,428 | 10/1997 |
| **30.** | Kuwabara | U.S. Patent No. 5,968,428 | 10/1999 |
| **31.** | Rein | U.S. Patent No. 6,020,826 | 2/2000 |
| **32.** | Warren et al. | U.S. Patent No. 6,260,383 | 7/2001 |
| **33.** | Canty | U.S Patent No. 6,546,749 | 4/2003 |
| **34.** | Hesse et al. | U.S. Patent No. 6,641,640 | 11/2003 |

As stated, Defendants may identify or rely upon additional references, either individually or in combination, that anticipate or render obvious the Asserted Claims as the discovery process progresses.

**II.     Patent L.R. 3-3(b).**

The claims of the Patents as set forth in Plaintiff's Disclosure of Asserted Claims and Preliminary Infringement Contentions, as properly construed or if construed to cover Defendants' products, are anticipated or rendered obvious in light of the prior art references in the References. To the extent that any of the References do not anticipate the Asserted Claims, their combination with the knowledge of one of ordinary skill in the art or other prior art disclosing the allegedly missing limitations render the Asserted Claims obvious.

Defendants may rely upon all or a subset of the References depending on Plaintiff's arguments, and Defendants' further discovery and investigations.  Defendants' assertions are in no way an admission or suggestion that a specific reference does not independently anticipate the Asserted Claims under 35 U.S.C. § 102.  Provided below are a few exemplary, but not exhaustive, motivations to combine the References.  Defendants reserve the right to amend these Invalidity Contentions.

**A.     Claims 16, 18, 29, 33, 34, and 35 of the '734 Patent**

To the extent that any of the References do not explicitly disclose the limitations as found in Claims 16, 18, 29, 33, 34, and 35 of the '734 patent, the References inherently disclose the

- 4 -

limitations, either alone or in combination with each other.  For at least the following reasons, one of ordinary skill in the art would have been motivated to combine the exemplar References because one of ordinary skill in the art would have known to use tungsten carbide powder that is shaped into a mold then sintered to form an article of jewelry.

Claim 16 of the '734 patent describes a method for making tungsten-carbide annular jewelry article which comprises:

> providing a mixture of two or more powdered materials which consist essentially of at least 50 weight percent tungsten carbide to form the annular article into a pressure mold having a cavity of predetermined annular configuration and sized formed therein, the size of the mold being greater that the final size of the annular band; compressing the powdered material mixture at a pressure sufficient to form an annular blank; and sintering the annular blank at a temperature sufficient to form a tungsten-carbide based annular jewelry article.

All other claims are cited by Plaintiff for the '734 patent are dependent on this claim, and all are anticipated or obvious in light of the References.

The Lawrence Stanley ring anticipates claim 16 of the '734 patent under Sections 102(a), (b), and (f).  The Stanley ring is a tungsten carbide industrial guide ring which was modified by Stanley for use as a finger ring in or around 1991, and was worn as a finger ring by Stanley for a period of approximately six months.  The Stanley ring was manufactured at his place of employment, Yillik Precision Industries, Inc. ("Yillik").  Yillik manufactures its tungsten carbide rings, including the Stanley ring, by providing a mixture of two or more powdered materials which consist essentially of at least 50 weight percent tungsten carbide and compacting the mixture into a mold and sintering at a temperature sufficient to form a tungsten-carbide ring.[2]  To the extent that the Stanley ring does not anticipate claim 16, claim 16 is obvious in light of the

---

[2] *See, e.g.*, http://www.yillik.com/yil0.htm ("Carbides are made by blending micron-sized tungsten carbide and cobalt powders, then compacting the mixture in a mold and sintering the molded part at a temperature high enough to cause the cobalt to flow. During this process the cobalt fills the voids between the tungsten grains and thoroughly coats each grain. When the cobalt solidifies, it cements; the grains together, forming a dense composit. Cemented carbides get their hardness from the tungsten grains and their toughness from the tight bonds produced by the cementing action of the cobalt metal. By varying the amount of cobalt we can change the hardness, wear resistance and toughness (shock resistance) of the carbide to suit your particular Tungsten Carbide needs.")

- 5 -

1   Stanley ring by itself, or in combination with any of the references disclosed in the following

2   paragraphs.

3       Lederrey and the corresponding British patent teach a tungsten carbide powder that is

4   shaped and sintered to form an article of jewelry, in this case a watch band.  The patent teaches

5   that to form "a piece of material containing tungsten or titanium carbide" a mixture is prepared

6   with "a powder of the metal carbide and a powder of a bonding metal" which is submitted to "the

7   furnace to carry out the final sintering thereof." (col. 1, lines 65-72; col. 2, lines 4-8).  Flanagan

8   indicates that a watch case may be considered an article of jewelry.  (col. 3, lines 37-41).

9       Iler teaches a method of providing a annular jewelry article having a desired surface

10  profile which comprises providing a mixture of two or more powdered materials (col. 1, lines 22-

11  25) which comprises at least 50% to less than 85% tungsten carbide (col. 2, lines 24-27) to form

12  the annular article to form a pressure mold having a cavity of predetermined annular

13  configuration and sized formed therein (col. 10, lines 1-69).  Iler also teaches compressing (col

14  10, lines 40 – 50) and sintering the tungsten carbide powdered mixture.  (col. 1, line 17)

15      Ledderrey, Iler, and Flanagan in light of the following render obvious a ring made

16  predominantly of tungsten carbide.  Bonjour teaches using tungsten carbide in predominant

17  amounts to create a jewelry article.  (col. 1, lines 65-66).  Rein teaches that a finger ring may be

18  made out of tungsten carbide.  (col. 7, lines 36-40).

19      Hesse, in combination with the above makes obvious the sintering of the tungsten carbide

20  ring, and teaches the use of hard sintering moldings made of tungsten carbide and a binder in

21  decorative applications like watch cases, jewelry, writing implements or the like.  (col. 1 , lines

22  53-59)  The tungsten carbide comprises at least 80% by weight but preferably not more than 95%

23  of the hard material which is mixed in powder form with a binder.  (col. 3, lines 20-29)

24      These above patents, in combination with References 11, 26, and 27 and which teach a

25  tungsten carbide ring that is identical to some of Plaintiff's rings, render obvious the Claims of

26  the '734 patent.

27      Claim 18 of the '734 patent, dependent on claim 16, claims a mixture that includes at least

28  81 weight percent tungsten carbide.  Claim 18 is invalid because claim 16, upon which it is

- 6 -

1    dependent, is anticipated by the Stanley ring.  To the extent that the Stanley ring does not

2    anticipate claim 16, claims 16 and 18 are obvious in light of the Stanley ring itself, or in

3    combination with any of the references discussed in the following paragraphs.

4         Nippon Tungsten and Maruyama describe an article of jewelry made of tungsten carbide

5    in as high of quantities as described in Plaintiff's patents.  (abstracts)  Kuwabara teaches an at

6    least 80% tungsten-carbide alloy.  (col. 9, lines 26-34)   Daniels teaches the use of sintered

7    tungsten carbide containing at 85% tungsten carbide and a binding material comprising which

8    comprises 3%-10% nickel.  (col. 7, line 51; col. 2, lines 52-59).  Rein teaches that a finger ring

9    may be made out of tungsten carbide.  (col. 7, lines 36-40).  Together, these patents make obvious

10   the '734 patent.

11        Claim 29 of the '734 patent, dependent on claim 16, claims an annular article with at least

12   one depression comprising a groove, slot, or hole formed in an outer surface.  Claim 29 is invalid

13   because claim 16, upon which it is dependent, is anticipated by the Stanley ring.  To the extent

14   that the Stanley ring does not anticipate claim 16, claims 16 and 29 are obvious in light of the

15   Stanley ring itself, or in combination with any of the references discussed in the following

16   paragraph.

17        Oganesyan teaches an annular jewelry article that has a groove formed in the outer

18   cylindrical surface and circumference of the ring in which there is a hole.  (col. 1 , lines 56-66)

19        Claim 33 of the '734 patent, dependent on claim 16, claims a step of finish polishing at

20   least one outer surface of the annular article.  Claim 33 is invalid because claim 16, upon which it

21   is dependent, is anticipated by the Stanley ring.  To the extent that the Stanley ring does not

22   anticipate claim 16, claims 16 and 33 are obvious in light of the Stanley ring itself, or in

23   combination with any of the references discussed in the following paragraph.

24        The following patents make obvious the polishing and grinding of this claim.  Grossman

25   teaches an annular finger ring that is polished and buffed.  (col. 2, line 105-109)  Lederrey teaches

26   polishing a jewelry articles made of tungsten carbide to provide a pleasing appearance.  (col. 5,

27   lines 47-49)  Fujimora teaches polishing to a mirror finish an article of jewelry made of tungsten

28   carbide.  (col. 1, lines 23-25)

- 7 -

1       Claim 34 is invalid because claim 16, upon which it is dependent, is anticipated by the

2   Stanley ring.  To the extent that the Stanley ring does not anticipate claim 16, claims 16 and 34

3   are obvious in light of the Stanley ring itself, or in combination with any of the references

4   discussed herein.

5       Claim 35 of the '734 patent, dependent on claim 16, claims that the annular article has at

6   least one flat or curved facet formed in an outer surface.  Claim 35 is invalid because claim 16,

7   upon which it is dependent, is anticipated by the Stanley ring.  To the extent that the Stanley ring

8   does not anticipate claim 16, claims 16 and 35 are obvious in light of the Stanley ring itself, or in

9   combination with any of the references discussed in the following paragraph.

10      Lampert teaches facets. (col. 1, lines 41-43)  Oganesyan teaches a jewelry article

11  comprising an annular body made of hard material wherein the annular body has at least one

12  curved external facet that is ground to a predetermined shape.  (col. 2, lines 8-29 )  Moreover, to

13  the extent the prior art references do not anticipate and/or render obvious the claims of the '734

14  patent, the elements therein are anticipated and/or rendered obvious by virtue of the fact that they

15  are commonly known in the fields of jewelry making and/or metallurgy.

16          **B.**    **Claims 1, 10, and 24 of the '736 Patent**

17      To the extent that any of the References do not explicitly disclose the limitations as found

18  in Claims 1, 10, and 24 of the '736 patent, the References inherently disclose the limitations,

19  either alone or in combination with each other.  For at least the following reasons, one of ordinary

20  skill in the art would have been motivated to combine the exemplar References because one of

21  ordinary skill in the art would have known use the common inlay process using different metals

22  with sintered tungsten carbide comprising the ring body.

23      Claims 1 of the '736 patent claims:

24      A method of making a jewelry article which comprises: providing an annular
    substrate formed of a hard material predominantly comprising tungsten carbide

25      and having an outer surface with an outer diameter and a depression disposed
    circumferentially in its outer surface; providing a metal band having an inner

26      diameter that is greater than the outer diameter of the annular substrate; and
    inwardly deforming the metal band to squeeze it into the depression in the outer

27      surface of the annular substrate so as to form the jewelry article, wherein the hard
    material is sufficiently hard to avoid being deformed during the inward deforming

28      of the metal band.

- 8 -

1   Each of these elements of this claim is found in the prior art. The Stanley ring discloses

2   providing an annular substrate formed of a hard material predominantly tungsten carbide with an

3   outer surface with an outer diameter. *See* Part II(A), *supra* & n.3. Additionally, tungsten carbide

4   jewelry items are known in the art and rendered obvious by <u>Lederrey</u>. Tungsten carbide is known

5   to jewelry makers to be durable and wear-resistant. (col. 1, lines 40-43). This patent also teaches

6   inserting pieces of other metal into the tungsten carbide jewelry. (Fig. 4) As shown in Figure 4, a

7   lug (5) may be inserted into a blind hole (23) of a body (1) made of tungsten carbide before final

8   sintering. (Fig. 4)

9   <u>Ledderrey</u>, <u>Iler</u>, and <u>Flanagan</u> in light of the <u>Brioux</u> teach a ring with precious metal

10  inlays. The inlays are placed into blind holes, or depressions, of various shapes in the body of the

11  ring. (col. 3 , lines 18-26) The metals comprising the ring and the inlay have different physical

12  properties. (col. 2, lines 5-6)

13  Also, <u>Bacharach</u> teaches the entire inlaying process with the exception of it being of

14  tungsten carbide. (col. 2, lines 90-92; figures 5-6, pg. 1, lines 105-108, pg. 2, lines 3-5) <u>Bager</u>

15  teaches inlay without tungsten carbide. (pg. 1, lines 52-55 to page 2, lines 2-8) <u>Bager</u> also

16  teaches the depression which extends entirely around the annular band, (col. 3, lines 38-48), and

17  that the annular substrate is formed as a unitary band. (col. 1, lines 4-11)

18  <u>Pasquetti</u> teaches providing an annular ring formed of a hard material and having an outer

19  surface with an outer diameter and a depression disposed circumferentially in its outer surface,

20  providing an elongated metal insert sized and dimensioned to at least partially fit into the

21  depression of the annular substrate, and disposing the elongated metal insert at least partially into

22  the depression so as to form the jewelry article, wherein the hard material is sufficiently hard to

23  avoid being deformed during the disposing of the metal insert. (col 2, lines 1-25)

24  <u>Iler</u> teaches a ring made out of tungsten carbide. <u>Rein</u> teaches that a finger ring may be

25  made out of tungsten carbide. (col. 7, lines 36-40). <u>Bonjour</u> teaches using tungsten carbide in

26  predominant amounts to create a jewelry article. (col. 1, lines 65-66) <u>Nippon Tungsten</u> and

27  <u>Maruyama</u> describe an article of jewelry made of tungsten carbide in as high of quantities as

28

- 9 -

1   described in Plaintiff's patents.  (abstracts)  Kuwabara teaches an at least 80% tungsten-carbide

2   alloy.  (col. 9, lines 26-34).

3        Claim 10 of the '736 patent, dependent on claim 1, claims the hard material of the jewelry

4   article is formed by sintering powders that consist essentially of tungsten carbide and a metal

5   binder material.  The Stanley ring discloses sintering of powders that consist essentially of

6   tungsten carbide and a metal binder material.  See Part II(A), supra. & n.3.  Daniels teaches the

7   use of sintered tungsten carbide containing at 85% tungsten carbide and a binding material

8   comprising which comprises 3%-10% nickel.  (col. 7, line 51; col. 2, lines 52-59)

9        These above patents, in combination with References 11, 24, 26, and 27, which teach a

10  tungsten carbide ring identical to many of those made by Plaintiff, render obvious the Claims of

11  the '736 patent.  Moreover, to the extent the prior art references do not anticipate and/or render

12  obvious the claims of the '736 patent, the elements therein are anticipated and/or rendered

13  obvious by virtue of the fact that they are commonly known in the fields of jewelry making

14  and/or metallurgy.

15        **C.     Claims 1, 10, 14, and 19 of the '314 Patent**

16        To the extent that any of the References do not explicitly disclose the limitations as found

17  in Claims 1, 10, 14, and 19 of the '314 patent, the References inherently disclose the limitations,

18  either alone or in combination with each other.  For at least the following reasons, one of ordinary

19  skill in the art would have been motivated to combine the exemplar References because one of

20  ordinary skill in the art would have known to grind and polish a ring made essentially of tungsten

21  carbide and binder with one or more facets.

22        Claim 1 of the '314 patent claims:

23        A method of making a jewelry ring which comprises: providing an annular finger
          ring made of a hard material consisting essentially of tungsten carbide, with the
24        annular ring having at least one external facet and defining an aperture configured
          and dimensioned to receive a person's finger; and grinding the at least one external
25        facet to a predetermined shape to provide a pleasing appearance to the jewelry
          ring, with the hard material being long wearing and virtually indestructible during
26        use of the jewelry ring.

27        Each of these elements of this claim in found in the prior art.  The Stanley ring anticipates

28  claim 1 of the '314 patent under Sections 102(a), (b), and (f).  The Stanley ring is made by

-10-

1   providing an annular ring made of hard material consisting essentially of tungsten carbide, with

2   the annular ring having at least one external facet and defining an aperature configured and

3   dimensioned to receive a person's finger; and grinding the at least one external facet to a

4   predetermined shape to provide a pleasing appearance to the jewelry ring with the hard material

5   being long wearing and virtually indestructible during the use of the jewelry ring.  To the extent

6   that the Stanley ring does not anticipate claim 1, claim 1 is obvious in light of the Stanley ring by

7   itself, or in combination with any of the references disclosed in the following paragraphs.  *See*

8   Part II(A), *supra.* & n.3.

9        Lederrey and Iler teach making jewelry articles from tungsten carbide.  Rein teaches that a

10   finger ring may be made out of tungsten carbide.  (col. 7, lines 36-40).  Together with Gogniat,

11   which teaches a method for making a jewelry article (watch cases, watch bands, bracelets, rings,

12   cuff links, brooches, pendants and the like; col. 1; lines 11-14) of a sintered hard metal that may

13   be tungsten carbide.  (col. 6, line 11)  The jewelry article may be machined and provided with

14   facets and may include an opening to incorporate gems.  (col. 6, lines 51-56)  Bonjour teaches

15   using tungsten carbide in predominant amounts to create a jewelry article.  (col. 1, lines 65-66)

16   Nippon Tungsten and Maruyama describe an article of jewelry made of tungsten carbide in as

17   high of quantities as described in Plaintiff's patents.  (abstracts)  Kuwabara teaches an at least

18   80% tungsten-carbide alloy.  (col. 9, lines 26-34)

19        Also, Fujimora describes a jewelry article made of a hard material comprising tungsten

20   carbide that is ground and polished to a mirror finish.  (col. 1, lines 4-17)  Iler teaches grinding

21   and polishing to a predetermined shape a hard material comprising tungsten carbide.  (col. 8, lines

22   17-18)  These patents predate and render obvious the '314 patent.

23        Claim 10 of the '314 patent, dependent on claim 1, claims the providing of a cavity in the

24   annular ring, the cavity having a predetermined size and shape that is configured to receive an

25   insert of a decoration component that provides a substantially different visual effect to the jewelry

26   ring.  Claim 14 of the '314 patent, dependent on claim 1, claims an insert of a visually different

27   hard material, a precious metal or a gemstone in the cavity that extends into the annular ring,

28   wherein the annular ring is integrally formed as a hardened substructure and the insert is provided

-11-

in the cavity thereof.  Claims 10 and 14 are invalid because claim 1, upon which they are

dependent, are anticipated by the Stanley ring.  To the extent that the Stanley ring does not

anticipate claim 1, claims 10 and 14 are obvious in light of the Stanley ring itself, or in

combination with any of the references discussed in the following paragraph.

Brogan teaches a method of forming a groove in a ring by machining in order to hold

gems, form facets, or hold precious metals.  (col. 1, lines 34-40)  Oganesyan discloses a method

of forming groove in a ring by machining to hold gems and forms facets.  (col. 2, lines 8-29 )

Hawke discloses methods for forming rings having inserts/inlays of a precious metal.

Claim 19 of the '314 patent, dependent on claim 1, claims the hard material of the ring is

formed by sintering powders that consist essentially of at least tungsten carbide and a metal

binder.  Claim 19 is invalid because claim 1, upon which it is dependent, is anticipated by the

Stanley ring.  To the extent that the Stanley ring does not anticipate claim 1, claim 19 is obvious

in light of the Stanley ring itself, or in combination with any of the references discussed in the

following paragraph.

Daniels teaches the use of sintered tungsten carbide containing at 85% tungsten carbide

and a binding material comprising which comprises 3%-10% nickel.  (col. 7, line 51; col. 2, lines

52-59)

These above patents, in combination with References 11, 24, 26, and 27, which teach a

tungsten carbide ring identical to many of those of Plaintiff, render obvious the Claims of the

'314 patent.  Moreover, to the extent the prior art references do not anticipate and/or render

obvious the claims of the '314 patent, the elements therein are anticipated and/or rendered

obvious by virtue of the fact that they are commonly known in the fields of jewelry making

and/or metallurgy.

**D.      Claims 1, 5, 6, 11, 19, and 20 of the '972 Patent**

To the extent that any of the References do not explicitly disclose the limitations as found

in Claims 1, 5, 6, 11, 19, and 20 of the '972 patent, the References inherently disclose the

limitations, either alone or in combination with each other.  For at least the following reasons, one

of ordinary skill in the art would have been motivated to combine the exemplar References

-12-

because one of ordinary skill in the art would have known to make a ring of predominantly

tungsten carbide ring that is capable of receiving inlays by a mechanical fit.

Claim 1 of the '972 patent claims:

A finger ring comprising: an annular body made of a sintered hard material comprising a predominantly tungsten carbide material, wherein the annular body has at least two external surfaces that are continuous and of a width sufficient to provide each external surface with a facet having a polished grey mirror finish and with the hard material being long wearing and virtually indestructible during normal use of the finger ring so that each facet retains its mirror finish, wherein each facet extends concentrically and continuously around the circumference of the ring without variations in its width, and wherein the body includes a cavity of a predetermined size and shape that is a continuous slot which extends entirely around the annular body and is configured to receive an insert of a decoration component that provides a substantially different visual effect to the ring, with the slot positioned between and adjacent to the facets, and the decoration component comprising a precious metal that is disposed in and fills the slot, which slot extends into the hard material, and the decoration component is mechanically fit with the hard material to hold the precious metal therein and wherein an outer surface of the precious metal forms a smooth transition with each facet.

Similarly, Claim 11 of the '972 patent claims:

A finger ring comprising:  an annular ring made of a sintered hard material comprising predominantly tungsten carbide, wherein the annular ring has at least one external surface that is continuous and of a width sufficient to provide an external surface facet, with the facet having a polished grey mirror finish and with the hard material being long wearing and virtually indestructible during normal use of the finger ring so that the facet retains its mirror finish, wherein the facet extends concentrically and continuously around the circumference of the ring without variations in its width, and wherein the annular ring includes a cavity of a predetermined size and shape that is a continuous slot which extends entirely around the annular ring; and a decoration component comprising a precious metal disposed in the slot to provide a substantially different visual effect to the ring, wherein the decoration component forms a second annular ring in the slot that fills a width of the slot continuously around the annular ring and that has an outer surface with any object that contacts the finger ring.

Each element is rendered obvious in light of the prior art.  The <u>Stanley</u> ring discloses a

finger ring comprising an annular body or ring made of a sintered hard material comprising a

predominantly tungsten carbide material, wherein the annular body or ring has at least one

external surface that is continuous and of a width sufficient to provide the external surface with a

one or more facets having a polished grey mirror finish and with the hard material being long

wearing and virtually indestructible during the normal use of the finger ring so that the one or

more facets retain their mirror finish, wherein the one or more facets extends concentrically and

continuously around the circumference of the ring without variations in width.  *See* Part II(A),

15327:0001\850127.3

1   *supra* & n.3.  Oganesyan teaches the use of tungsten carbide in fabrication of jewelry articles

2   such as rings (col. 1, lines 30-46; col 2, lines 45-50; col 4, line 49).  Oganesyan describes a

3   jewelry article comprising an annular body made of hard material wherein the annular body has at

4   least one curved external facet that is ground to a predetermined shape and hard material being

5   long wearing and virtually indestructible during normal use.  (col. 2, lines 8-29 )  The annular

6   body with an axis of symmetry, an inner and outer circumferences, and includes a first frusto

7   conically shaped facet extending around the outer circumference and forming a first outer facet of

8   the body proximate a first axial extremity thereof.  (*id.*)  The second frusto conically shaped facet,

9   around the outer circumference of the body, in forming a second outer facet proximate a second

10   axial extremity opposite the first axial extremity and a cylindrically shaped portion forming a

11   third facet.  (*id.*)  Oganesyan teaches a cavity of predetermined size and shape configured to

12   receive an insert of a decoration component; the cavity is slot, groove, notch or hole; a continuous

13   groove or slot.  (*id.*)

14         Oganesyan, together with Lederrey, Iler, and Rein teach making jewelry articles from

15   tungsten carbide.  Gogniat teaches a method for making a jewelry article (watch cases, watch

16   bands, bracelets, rings, cuff links, brooches, pendants and the like; col. 1; lines 11-14) of a

17   sintered hard metal that may be tungsten carbide.  (col. 6, line 11)  The jewelry article may be

18   machined and provided with facets and may include an opening to incorporate gems.  (col. 6,

19   lines 51-56)  Bonjour teaches using tungsten carbide in predominant amounts to create a jewelry

20   article.  (col. 1, lines 65-66)  Nippon Tungsten and Maruyama describe an article of jewelry made

21   of tungsten carbide in as high of quantities as described in Plaintiff's patents.  (abstracts)

22   Kuwabara teaches an at least 80% tungsten-carbide alloy.  (col. 9, lines 26-34)  Daniels teaches

23   the use of sintered tungsten carbide containing at least 85% tungsten carbide and binding material

24   which comprises 3-10% nickel (line 51, col 7; col 2, lines 52-59).  Together, these references

25   render obvious the claims of the '972 patent.

26         In addition, Lampert teaches facets.  (col. 1, lines 41-43)  Oganesyan teaches a jewelry

27   article comprising an annular body made of hard material wherein the annular body has at least

28   one curved external facet that is ground to a predetermined shape.  (col. 2, lines 8-29 )

-14-

15327:0001\850127.3

1     Fujimora describes a jewelry article made of a hard material comprising tungsten carbide

2     that is ground and polished to a mirror finish. (col. 1, lines 4-17) Iler teaches grinding to a

3     predetermined shape a hard material comprising tungsten carbide. (col. 8, lines 17-18)

4     Grossman discloses an annular finger ring having an inner surface or circumference and

5     external surface and outer circumference with each surface having a continuous portion

6     concentric around the circumference of the ring, the portions being parallel; the ring is polished

7     and buffed; includes a cavity or continuous slot which receives an insert namely a precious metal

8     via mechanical fit; not tungsten carbide but combine with other patents. (col. 1, lines 12-21; col.

9     2, lines 64-67, lines 105-109)

10     Bager teaches a jewelry article comprising an annular finger ring having an inner surface

11     an external surface, the surfaces have a continuous portion concentric around the circumference

12     of the ring, the portions being parallel; the rings include a cavity or continuous slot which

13     receives an insert namely precious metal via a mechanical fit. (col. 1, lines 4-11, 52-55 to col. 3,

14     lines 2-8; col. 3, lines 38-48)

15     Canty teaches a jewelry article, in particular a ring, with an outer circumferential groove

16     into which a different material such as gems or beads may be inserted. (col. 1, lines 23-62) The

17     side walls of the groove do not overlap the outer surface. (id.)

18     Warren teaches an integral ring that has an annular groove extending around the entire

19     outer surface of the ring. (col. 12, lines 18-29)

20     Claims 5 and 6, and 19 and 20, are dependent on claims 1 and 11 respectively, which are

21     invalid as set forth above. Therefore, claims 5 and 6 and 19 and 29 are similarly invalid.

22     These above patents, in combination with References 11, 24, 26, and 27, which teach a

23     tungsten carbide ring, render obvious the Claims of the '972 patent. Moreover, to the extent the

24     prior art references do not anticipate and/or render obvious the claims of the '972 patent, the

25     elements therein are anticipated and/or rendered obvious by virtue of the fact that they are

26     commonly known in the fields of jewelry making and/or metallurgy.

27     **III.     Patent L.R. 3-3(c).**

28     The following chart identifies where each limitation of each Asserted Claim of the Patents

-15-

appears in each item of prior art.  The citations provided in this chart are representative of the teachings of the listed References and are not exhaustive.  In light of the deficiencies in Plaintiff's Infringement Contentions and due to the ongoing discovery process, Defendants reserve the right to modify this chart to add additional prior art references in light of information gained through ongoing investigations of patent databases around the world or during discovery, arguments or positions advanced by Plaintiff, or the Court's claim construction rulings.

| | Short Name/Title | Prior Art Reference | Asserted Claim(s) |
|---|---|---|---|
| **1.** | Krope | | Claims 1 and 11 of the '972 patent<br><br>Claims 1, 10, and 14 of the '314 patent<br><br>Claims 1 and 24 of the '736 patent<br><br>Claims 16, 29, 33, 34, and 35 of the '734 patent |
| **2.** | Bacharach | col. 2, lines 90-92, figs. 5-6, pg. 1, lines 105-108; pg. 2, lines 3-5 | Claim 1 of the '736 patent |
| **3.** | Grossman | col. 2, line 105-109 | Claim 33 of the '734 patent |
| | | *Id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| **4.** | Croselmire | | |
| **5.** | Brogan | col. 1, lines 34-40 | Claims 10 and 14 of the '314 patent |
| **6.** | Bager | col. 1, lines 4-11, 52-55; col. 3, lines 2-8; col. 3, lines 38-48 | Claim 1 of the '736 patent |
| | | *id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| **7.** | Wittmayer | | Claims 1 and 11 of the '972 patent<br><br>Claims 1, 10, and 14 of the '314 patent |

-16-

| | | | |
|---|---|---|---|
| | | | Claims 1 and 24 of the '736 patent |
| | | | Claims 16, 29, 33, 34, and 35 of the '734 patent |
| **8.** | Frackman | | Claims 1 and 11 of the '972 patent |
| | | | Claims 1, 10, and 14 of the '314 patent |
| | | | Claims 1 and 24 of the '736 patent |
| | | | Claims 16, 29, 33, 34, and 35 of the '734 patent |
| **9.** | Brioux | col. 3, lines 18-26; col. 2, lines 5-6 | Claim 1 of the '736 patent |
| **10.** | Hawke | | Claims 10 and 14 of the '314 patent |
| **11.** | General Electric Carboloy Die Catalog and rings | | All claims |
| **12.** | Ledderey | col. 1, lines 65-72; col. 2, lines 4-8 | Claim 16 of the '734 patent |
| | | col. 5, lines 47-49 | Claim 33 of the '734 patent |
| | | col. 1, lines 40-43; fig. 4 | Claim 1 of the '736 patent |
| | | *Id.* | Claim 1 of the '314 patent |
| | | *Id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| **13.** | Lederrey | *Id.* | *Id.* |

-17-

15327:0001\850127.3

| 14. | Iler | col. 1, lines 22-25; col. 1, lines 17; col. 2, lines 24-27, col. 10; lines 1-69, col. 10, lines 40-50 | Claim 16 of the '734 patent |
|---|---|---|---|
| | | *Id.* | Claim 1 of the '736 patent |
| | | *Id.* | Claim 1 of the '314 patent |
| | | col. 8, lines 17-18 | Claim 1 of the '314 patent |
| | | col. 1, lines 22-25; col. 1, lines 17; col. 2, lines 24-27, col. 10; lines 1-69, col. 10, lines 40-50 | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| 15. | Eberle | | |
| 16. | Flanagan | col. 3, lines 37-41 | Claim 16 of the '734 patent |
| 17. | Daniels | col. 7, line 51; col. 2, lines 52-59 | Claim 18 of the '734 patent |
| | | *id.* | Claim 10 of the '736 patent |
| | | *id.* | Claim 19 of the '314 patent |
| | | *Id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| 18. | Fujimora | col. 1, lines 23-25 | Claim 33 of the '734 patent |
| | | col. 1, lines 4-17 | Claim 1 of the '314 patent |
| | | *id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| 19. | Morita | | Claim 18 of the '734 patent |
| | | | Claim 1 of the '736 patent |
| | | | Claim 1 of the '314 patent |
| | | | Claims 1, 5, 6, 11, 19, and 20 of the '972 patent |
| 20. | Bonjour | col. 1, lines 65-66 | Claim 16 of the '734 patent |
| | | *Id.* | Claim 1 of the '736 patent |
| | | *Id* | Claim 1 of the '314 patent |

-18-

| | | | |
|---|---|---|---|
| | | *Id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| **21.** | Nippon Tungsten | abstract; | Claim 18 of the '734 patent |
| | | *Id.* | Claim 1 of the '736 patent |
| | | *Id.* | Claim 1 of the '314 patent |
| | | *Id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| **22.** | Gogniat | col. 1, line 11-14; col. 6, line 11, 51-56 | Claim 1 of the '314 patent |
| | | *Id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| **23.** | Maruyama | abstract; | Claim 18 of the '734 patent |
| | | *id.* | Claim 1 of the '736 patent |
| | | *Id* | Claim 1 of the '314 patent |
| | | *Id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| **24.** | Oganesyan | col. 1, lines 56-66 | Claim 29 of the '734 patent |
| | | col. 2, lines 8-29 | Claim 35 of the '734 patent |
| | | *Id.* | Claims 10 and 14 of the '314 patent |
| | | col. 1, lines 30-46, col. 2, lines 8-29, 45-50; col. 4, line 49 | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| | | *id.* | |
| **25.** | Yillik Precision Industries, Inc. Catalog | | All claims |
| **26.** | Kennametal specialty carbide products | | All claims |
| **27.** | Lampert | col. 1, lines 41-43 | Claim 35 of the '734 patent |
| | | *id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |

-19-

| 28. | Pasquetti | col. 2, lines 1-25 | Claim 1 of the '736 patent |
|---|---|---|---|
| 29. | Kuwabara | col. 9; lines 26-34; | Claim 18 of the '734 patent |
| | | *id.* | Claim 1 of the '736 patent |
| | | *Id.* | Claim 1 of the '314 patent |
| | | *id.* | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| 30. | Warren | col. 12, lines 18-9 | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| 31. | Canty | col. 1, lines 23-62 | Claim 1, 5, 6, 11, 19, and 20 of the '972 patent |
| 32. | Hesse | col. 1, lines 53-59; col. 3, lines 20-29 | Claim 16 of the '734 patent |
| 33. | Lawrence Stanley tungsten carbide bushing or guide ring modified for use as a finger ring | | All claims. |
| 34. | Rein | col. 7, lines 36-40 | All claims. |

## IV.    Patent L.R. 3-3(d).

The Asserted Claims are invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2, and/or lack of enablement, written description, and best mode under 35 U.S.C. § 112, ¶ 1. The following contentions under 35 U.S.C. § 112, ¶¶ 1-2 are merely exemplary and are not exhaustive. In light of the below-mentioned deficiencies, Defendant reserves the right to supplement these Invalidity Contentions to identify further bases for invalidity.

Asserted Claims 1, 5, 6, and 11, 19, and 20 of the '972 Patent are invalid for lack of written description, enablement, and/or best mode under 35 U.S.C. § 112, ¶ 1, and/or for indefiniteness under U.S.C. § 112, ¶ 2.

Claim 1 of the '972 Patent is invalid for lack of written description because it claims a tungsten carbide ring which is "virtually indestructible during normal use" but fails to disclose or explain virtual indestructibility of the ring in the specification. For the same reason, Claim 1

-20-

1  lacks enablement as it does not teach one skilled in the art how to make a virtually indestructible

2  ring. Additionally, Claim 1 is invalid for indefiniteness for failing to define "virtually

3  indestructible." Finally, Claim 1 is invalid because the '972 patent does not disclose the best

4  mode of practicing the invention as recited in Claim 1. Claims 5 and 6 of the '972 patent are

5  invalid because they depend on Claim 1, and Claim 1 is invalid for the foregoing reasons.

6  Moreover, Claims 5 and 6 are invalid because the '972 Patent does not disclose the best mode of

7  practicing the invention as recited in these claims, respectively.

8          Claim 11 of the '972 Patent is invalid for the same infirmities described in Claims 1, 5,

9  and 6, mentioned above—namely, for lack of written description and enablement for failing to

10  disclose claimed virtually indestructible properties, lack of enablement for the same, for

11  indefiniteness for failing to define "virtually indestructible"—and because the '072 Patent fails to

12  disclose the best mode of practicing the invention as recited in Claim 11. Claim 11 is further

13  invalid for indefiniteness due to lack of antecedent basis because the claim sets forth two different

14  "annular rings," but the last reference to "the annular ring" fails to identify which of the two

15  annular rings is meant. Claims 19 and 20 of the '972 Patent are invalid because they depend on

16  Claim 11, and Claim 11 is invalid for the foregoing reasons. Furthermore, Claims 19 and 20 are

17  invalid because the '972 Patent does not disclose the best mode of practicing the invention as

18  recited in these claims, respectively.

19          Asserted Claims 1, 10, 14, and 19 of the '314 Patent are invalid under 35 U.S.C. § 112, ¶

20  2, for indefiniteness resulting from improper mixing of claim types, and under 35 U.S.C. § 112, ¶

21  1 for failure to disclose best mode. Claim 1 is also invalid for lack of written description,

22  enablement, and/or best mode under U.S.C. § 112, ¶ 1, and/or for indefiniteness under 35 U.S.C.

23  § 112, ¶ 2, upon further grounds as discussed below.

24          Claim 1 of the '314 Patent pervasively and improperly mixes apparatus limitations with a

25  method claim and is, therefore, indefinite. For example, Claim 1 claims "[a] method of making a

26  jewelry ring" but also sets forth extensive limitations to the ring apparatus, namely, "an annular

27  finger ring made of a hard material consisting essentially of tungsten carbide, with the annular

28  ring having at least one external facet and defining aperture configured and dimensioned to

-21-

receive a person's finger," and further claims a ring that is "virtually indestructible." Moreover, Claim 1 is further invalid for claiming a method to make a "virtually indestructible" ring due to the same infirmities found in Claims 1, 5, 6, and 11 of the '972 Patent discussed above—lack of written description and enablement for failing to disclose claimed virtually indestructible properties, lack of enablement for a virtually indestructible ring, and for indefiniteness for failing to define "virtually indestructible." Furthermore, Claim 1 is invalid for indefiniteness for setting forth a limitation which includes "a pleasing appearance to the jewelry ring" because such limitation is based on the subjective opinion of the practitioner. Finally, Claim 1 is invalid because the '314 Patent fails to disclose the best mode of practicing the invention as recited in Claim 1.

Claim 10 of the '314 Patent is invalid because it depends from Claim 1, which is invalid for the foregoing reasons. Furthermore, Claim 10 is invalid because the '314 Patent's fails to disclose the best mode of practicing the invention as recited in Claim 10. Claims 14 and 19 of the '314 Patent are invalid because they depend from Claim 10, which is invalid for the foregoing reasons. Furthermore, Claims 14 and 19 are invalid because the '314 Patent fails to disclose the best mode of practicing the invention as recited in these claims, respectively.

Asserted Claims 1, 10, and 24 of the '736 Patent are invalid under 35 U.S.C. § 112, ¶ 2, for improper mixing of claim types, and under 35 U.S.C. § 112, ¶ 1, for failure to disclose best mode. Claim 24 is further invalid for lack of written description, enablement, and/or best mode under 35 U.S.C. § 112, ¶ 1, and/or for indefiniteness under U.S.C. § 112, ¶ 2.

Claim 1 of the '736 Patent pervasively and improperly mixes apparatus limitations with a method claim. For example, Claim 1 claims "[a] method of making a jewelry article" but also sets forth extensive limitations to an apparatus, namely, "an annular substrate formed of a hard material predominantly comprising tungsten carbide and having an outer surface with an outer diameter and a depression disposed circumferentially in its outer surface," and further sets forth that a particular component of the ring is "sufficiently hard to avoid being deformed during the [process]." Claim 1 is further invalid for failing to disclose the best mode of practicing the invention as recited in Claim 1. Claims 10 and 24 of the '736 Patent are invalid because they

-22-

15327:0001\850127.3

1   depend on Claim 1, and Claim 1 is invalid for the foregoing reasons.  Furthermore, Claims 10 and

2   24 are invalid because the '736 Patent fails to disclose the best mode of practicing the invention

3   as recited in these claims, respectively.

4       Also, Claim 24 of the '736 Patent is invalid for lack of written description because it

5   claims "a method of making a jewelry article" using a substrate "having an outer surface . . . and

6   a depression which comprises one or more apertures," but fails to disclose or explain "apertures"

7   or the relationship between depressions and apertures in the specification.  For the same reason,

8   Claim 24 lacks enablement as it does not teach one skilled in the art how to make a jewelry article

9   using a substrate with apertures as mentioned.  Claim 1 is also invalid for indefiniteness for

10  failing to define "aperture."  Moreover, Claim 24 is invalid for indefiniteness due to lack of

11  antecedent basis for "the annular band" mentioned in the claim.  Finally, Claim 24 is invalid

12  because the '736 Patent does not disclose the best mode of practicing the invention as recited in

13  Claim 24.

14      Claims 16, 18, 29, 33, 34, and 35 of the '734 Patent are invalid because the '734 Patent

15  does not disclose the best mode of practicing the invention as recited in these claims, respectively.

16  **V.    Patent L.R. 3-4.**

17      Defendants made available for inspection and copying the documents required under

18  Patent L.R. 3-4 in connection with their original Preliminary Invalidity Contentions, and have no

19  additional documents to produce at this time.  Such documents will be made available for

20  inspection and copying as they become available.

21      DATED this 28th day of August, 2008.

22      JONES WALDO HOLBROOK & McDONOUGH PC

23

24          _Butt Elic_

25    By:_____

26      Brett D. Ekins
    Andrew H. Stone

27      Brent T. Winder
    *Attorneys for Jewelry Innovations, Inc. and Tosyali*

28      *International, Ltd.*