1

2                                                          **E-filed 4/14/2009**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12

13    TRENT WEST,                                Case Number C 07-1812 JF (HRL)

14                    Plaintiff,                 ORDER[1] (1) DENYING MOTION
                                                 FOR SUMMARY JUDGMENT; (2)
15           v.                                  GRANTING MOTION TO SHIFT
                                                 BURDEN OF PROOF; AND (3)
16    JEWELRY INNOVATIONS, INC., TOSYALI         DENYING MOTION FOR
      INTERNATIONAL, INC. (dba BENCHMARK),       SUMMARY JUDGMENT OF
17    DIAMOND NORTHSTAR, INC. (dba               INVALIDITY
      TUNGSTEN MAGNUM), A'JAMAIS DESIGNS,
18    INC. (dba INFINITY RINGS); and CROWN       [Re: docket nos. 244, 252 & 263]
      RING, INC.,
19
                      Defendants.
20

21

22           Plaintiff Trent West ("West") moves for summary judgment of infringement of U.S.

23    Patent Nos. 6,928,734 ("the '734 patent"); 6,990,736 ("the '736 patent"); 7,032,314 ("the '314

24    patent"); and 7,076,972 ("the '972 patent").  In the alternative, West moves to shift the burden of

25    proof as to infringement pursuant to 35 U.S.C. § 295.  Defendant Crown Ring, Inc. ("Crown")

26    has filed a cross-motion for summary judgment of invalidity of the patents-in-suit and for a

27    _____

28        [1] This disposition is not designated for publication in the official reports.

      Case No. C 07-1812 JF (HRL)
      ORDER DENYING MOTION FOR SUMMARY JUDGMENT ETC.
      (JFLC1)

1    determination that the patents are unenforceable due to West's inequitable conduct.  The Court

2    has considered the moving and responding papers filed by the parties and the arguments made at

3    the hearing on March 23, 2009.  For the reasons set forth below, the cross-motions for summary

4    judgment will be denied.  The motion to shift the burden of proof will be granted.

5                                        **I.  BACKGROUND**

6            West is the sole inventor of the patents-in-suit, which describe methods for

7    manufacturing tungsten carbide rings.[2]  The manufacturing process includes (1) pouring a fine

8    powder comprised primarily of tungsten or tungsten carbide along with several trace metals (*e.g.*,

9    nickel, cobalt, and/or chromium) into a ring-shaped mold; (2) compressing the mixture in the

10   mold to form what is referred to as a "green" ring blank, which is solid enough to be handled and

11   even filed or sanded; (3) taking the green blank and heating (or "sintering") it at a temperature

12   that causes the individual metal particles to re-crystallize and form a stronger blank that is

13   smaller in size as compared to the green blank (the sintering process causing the green blank to

14   shrink in size); and (4) finishing the sintered blank through polishing or attaching additional

15   features such as gemstones.  *See, e.g.*, '736 patent col. 6:5 - col. 7:20.  The first three steps also

16   are known in the industry as the "press and sinter" method.  *See id.* col. 1:62 - col. 2:45.

17           Crown is a Canadian company that sells jewelry rings in both the United States and

18   Canada.  It purchases tungsten carbide ring blanks from the Chinese company Shenli Tungsten

19   Steel Jewelry (H.K.) Co. Ltd. ("Shenli").  Shenli partially finishes many of the blanks it sends to

20   Crown, for example by grinding an inlay groove into the ring or adding a surface finish.  After

21   receiving the blanks, Crown finishes and polishes the blanks into a final product.  According to

22   West, the method of manufacture employed by Shenli infringes the method claims of the '734,

23   '736 and '314 patents.  The importation of these blanks by Crown thus is alleged to violate 35

24   U.S.C. § 271(g), which prohibits the importation of products formed by a patented process.  West

25

26   _____

27           [2] Tungsten carbide is comprised of tungsten and carbon.  *See* Trojan Decl. Ex. 5 at 10.
     Tungsten carbide apparently retains its luster longer than pure tungsten, but both are significantly
28   more durable than traditional precious metals such as gold and platinum.

                                                    2

1    also alleges that the composition of the Shenli blanks infringes claim 1 of the '972 patent.[3]

2        From the representative blanks produced during discovery, West was able to determine

3    the basic chemical composition of the blanks, of which all but one were at least 85% tungsten

4    carbide.  *See* Cline Decl. ¶ 7.  To demonstrate how Shenli's blanks are manufactured, West has

5    submitted the declaration of Glen Chung ("Chung"), who is the owner of Etre Designs, LLC

6    ("Etre"), a Michigan-based manufacturer and retailer of jewelry, including tungsten carbide rings.

7    *See* Chung Decl. ¶ 1.  According to Chung, Etre and Shenli are partners in a joint venture

8    pursuant to which Shenli manufactures tungsten carbide blanks for Etre.  *See id.* ¶ 2.  In October

9    2008, Chung visited at least two of Shenli's factories in China.  *See id.* ¶ 4.  West uses Chung's

10   observations from this trip as evidence to support his allegation that Shenli practices the press

11   and sinter method claimed by the patents-in-suit.[4]

12                                    **II. DISCUSSION**

13       Summary judgment should be granted only when there are no genuine issues of material

14   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

15   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

16   burden of informing the court of the basis for the motion and identifying the portions of the

17   pleadings, depositions, or other evidence that demonstrate the absence of a triable issue of

18   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this

19   initial burden, the burden shifts to the non-moving party to present specific facts showing that

20

21       [3] Crown offers approximately fifty different tungsten carbide rings for sale.  The parties
22   agreed that Crown would produce representative blanks, and Crown produced two sets of blanks
     corresponding to the following Crown ring style numbers: TU-0193; TU-0510; TU-0004;
23   TU-0019; TU-0195-S; TU-0010-SI; and TU-0196-S.  These blanks will be considered as
     representative designs for all Crown/Shenli ring blanks.

24       [4] West also offers the declaration of Andrew Derrig ("Derrig"), who accompanied Chung
25   on his visit to China.  Derrig is a director of merchandising for a jeweler that sells Etre tungsten
     carbide rings.  Derrig Decl. ¶¶ 2-3.  Crown objects to the Derrig declaration on the ground that he
26   is not qualified to make statements regarding the Shenli's manufacturing methods.  Crown also
     objects to the Derrig Declaration because Chung acted as the translator for Derrig.  *Id.* ¶ 4.
27   Besides presenting a hearsay issue, the Derrig declaration appears to be redundant in light of the
28   Chung declaration and will not be discussed in any further detail.

                                          3

1  there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  *See also*

2  *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("a moving party

3  without the ultimate burden of persuasion at trial does not carry its initial burden of production if

4  it fails to produce affirmative evidence negating an essential element of the nonmoving party's

5  claim or defense.").  A genuine issue for trial exists if the non-moving party presents evidence

6  from which a reasonable jury, viewing the evidence in the light most favorable to that party,

7  could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49.  *See also*

8  *Dark v. Curry County*, 451 F.3d 1078, 1082 (9th Cir. 2006) ("the nonmoving party simply is

9  required to show specific facts, as opposed to general allegations, that present a genuine issue

10 worthy of trial.").  Determining credibility, the weighing of evidence, and drawing conclusions

11 from the facts are functions of the jury, not the judge, and should be reserved for trial.  *See*

12 *Anderson*, 477 U.S. at 255.

13      "Summary judgment is appropriate in a patent case, as in other cases, when there is no

14 genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

15 law."  *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) (citations

16 omitted); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 172 F.3d 1361,

17 1368 (Fed. Cir. 1999).  Accordingly, summary judgment should be granted if either party

18 demonstrates the absence of a genuine issue of material fact on the issue of infringement or any

19 defense against infringement.  *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 247-48.

20      A.  Infringement

21      The infringement inquiry is a two-step process.  *Lockheed Martin Corp. v. Space*

22 *Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003).  The Court first construes the claims of

23 the patent to determine their proper scope.[5]  *Id.*  The Court then compares the properly construed

24 claims to the accused device.  *Id.*  To prove infringement, the patentee must show that the

25 accused device meets each claim limitation either literally or under the doctrine of equivalents.

26 *Catalina Int'l Mktg., Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).  Literal

27

28      [5] The Court issued its claim construction order on April 10, 2008.

4

1  infringement requires that the accused device contain each limitation of the patent claim.  *Id.*

2  Infringement under the doctrine of equivalents requires that the accused device contain an

3  equivalent for each limitation not literally satisfied.  *Id.*

4        West asserts that the representative Crown/Shenli ring blanks infringe multiple claims of

5  the patents-in-suit.  The claims at issue in the '734, '736, and '314 patents are process claims.

6  Claim 1 of the '736 patent is typical and recites:

7              A method of making a jewelry article which comprises:

8              providing an annular substrate formed of a hard material
              predominantly comprising tungsten carbide and having an outer
9              surface with an outer diameter and a depression disposed
              circumferentially in its outer surface;

10             providing a metal band having an inner diameter that is greater
11             than the outer diameter of the annular substrate; and

12             inwardly deforming the metal band to squeeze it into the
              depression in the outer surface of the annular substrate so as to
13             form the jewelry article, wherein the hard material is sufficiently
              hard to avoid being deformed during the inward deforming of the
14             metal band.

15  '736 patent col. 15:63 - col. 16:8.  Claim 1 of the '972 patent is a product claim and recites:

16             A finger ring comprising:

17             an annular body made of a sintered hard material comprising a
              predominantly tungsten carbide material, wherein the annular body
18             has at least two external surfaces that are continuous and of a width
              sufficient to provide each external surface with a facet having a
19             polished grey mirror finish and with the hard material being long
              wearing and virtually indestructible during normal use of the finger
20             ring so that each facet retains its mirror finish, wherein each facet
              extends concentrically and continuously around the circumference
21             of the ring without variations in its width, and wherein the body
              includes a cavity of a predetermined size and shape that is a
22             continuous slot which extends entirely around the annular body and
              is configured to receive an insert of a decoration component that
23             provides a substantially different visual effect to the ring, with the
              slot positioned between and adjacent to the facets, and the
24             decoration component comprising a precious metal that is disposed
              in and fills the slot, which slot extends into the hard material, and
25             the decoration component is mechanically fit with the hard
              material to hold the precious metal therein and wherein an outer
26             surface of the precious metal forms a smooth transition with each
              facet.

27  '972 patent col. 9:21-42.  The primary basis of Crown's opposition to West's infringement

28

5

1  argument is that the Chung declaration fails to provide a sufficient basis for West to meet his

2  burden of showing infringement.  Crown also asserts that West should have disclosed both the

3  Chung and Derrig declarations in his preliminary infringement contentions, which were amended

4  after Chung's trip to China.[6]  West concedes that certain portions of the Chung declaration rely

5  upon statements made by Shenli representatives to Chung during his visit.  *See*, *e.g.*, Chung Decl.

6  ¶ 9 ("[A Shenli representative] has informed me that Shenli uses the same press and sinter

7  method to manufacture tungsten carbide ring nuggets/blanks, and the same methods to finish the

8  blanks into rings").  West argues that this hearsay evidence is nonetheless admissible under Fed.

9  R. Evid. 807, which provides a residual hearsay exception for a statement that is offered as

10  evidence of a material fact, and because the statement is more probative than any other evidence

11  the proponent could reasonably procure, "the interests of justice will best be served by admission

12  of the statement into evidence."  West argues that the statements made by Shenli are inherently

13  trustworthy because Shenli and Chung are business partners and thus Shenli owes Chung a

14  fiduciary duty, which provides the "requisite circumstantial guarantee of trustworthiness."  Reply

15  Br. at 8.  In support of this proposition, West cites *Edo Reconnaissance and Surveillance Sys.,*

16  *Inc. v. Phoenix Logistics, Inc.*, No. 05-02789, 2006 WL 2038058 (N.D. Cal. July 16, 2007), in

17  which this Court noted that the "existence of a joint venture gives rise to a fiduciary or

18  confidential relationship."  *Id.* at *6 (quoting *Celador Intern. Ltd. v. Walt Disney Co.*, 347 F.

19  Supp. 2d 846, 853 (C.D. Cal. 2004)).  However, *Edo* says nothing with respect to the

20  relevance—if any—of such a fiduciary relationship as it relates to finding an exception to the

21  hearsay rule pursuant to Rule 807.  The Court concludes that statements made by Shenli to

22  Chung were hearsay, and that admitting such evidence would not serve the interests of justice,

23

24

25

26      [6] Crown requests a continuance pursuant to Rule 56(f) to conduct depositions of these

27  two individuals.  Such a request is moot in light of the Court's ruling on West's motion for
    summary judgment.  Crown also asserts that West did not disclose Chung as an expert witness

28  prior to his declaration submitted in support of the motion for summary judgment.

Case No. C 07-1812 JF (HRL)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC1)

1    especially when it is offered in the form of a declaration at the summary judgment stage.[7]

2    Accordingly, the motion for summary judgment as to infringement will be denied.

3         B.  Invalidity

4         "A patent may not be obtained…if the differences between the subject matter sought to

5    be patented and the prior art are such that the subject matter as a whole would have been obvious

6    at the time the invention was made to a person having ordinary skill in the art to which said

7    subject matter pertains." 35 U.S.C. § 103.  Obviousness is a legal determination based on

8    underlying determinations of fact. *See*, *e.g.*, *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d

9    1476, 1479 (Fed. Cir. 1997).  These underlying factual determinations, also known as the

10   *Graham* findings pursuant to the Supreme Court's holding in *Graham v. John Deere Co. of*

11   *Kansas City*, 383 U.S. 1 (1966), include: (1) the scope and content of the prior art; (2) the level

12   of ordinary skill in the art; (3) the differences between the prior art and the claimed invention;

13   and (4) the extent of any proffered objective evidence of nonobviousness. *Monarch Knitting*

14   *Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998) (citing *Graham*, 383

15   U.S. at 17).

16        A patent is presumed to be valid, and the party asserting an obviousness defense has the

17   burden of proving invalidity by clear and convincing evidence. *Ashland Oil, Inc. v. Delta Resins*

18   *& Refractories, Inc.*, 776 F.2d 281, 291-92 (Fed. Cir. 1985).  The "presumption of validity under

19   35 U.S.C. § 282 carries with it a presumption that the Examiner did his duty and knew what

20   claims he was allowing." *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed.

21   Cir. 1989).  Summary judgment as to invalidity pursuant to § 103 may be appropriate where "the

22   content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are

23   not in material dispute." *KSR Intern. Co. v. Teleflex Inc.,* 127 S. Ct. 1727, 1745-46 (2007).

24

25        [7] In addition, evidence offered under Rule 807 must be made "known to the adverse party
     sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity

26   to prepare to meet it, [and] the proponent's intention to offer the statement and the particulars of
     it, including the name and address of the declarant."  As noted above, Crown asserts that it was

27   unaware of West's intention to use Chung as an expert prior to the filing of the instant motions.

28

7

1    West contends that Crown's motion fails because (1) Crown failed to present sufficient

2    evidence to allow the Court to make the underlying factual determinations required by *Graham*

3    and (2) even if Crown has presented such evidence, it fails to show how it would be obvious for a

4    person of ordinary skill in the art to combine the proffered prior art to make the claimed

5    invention.  West is correct that a district court must make factual findings before determining

6    whether the proffered prior art renders a patent invalid.  *See Ruiz v. A.B. Chance Co.*, 234 F. 3d

7    654, 663 (Fed. Cir. 2000) ("Our precedent clearly establishes that the district court must make

8    *Graham* findings before invalidating a patent for obviousness.").  With respect to the first

9    *Graham* finding, Crown argues that the determination of the scope of the prior art is "easily

10   discernable from the prior art itself."  Reply. Br. at 6.  However, Crown overstates its case.  The

11   scope of prior art may be defined by inquiring whether the prior art is from the same field of the

12   invention or whether it is "reasonably pertinent" to the problem the inventor sought to resolve.

13   *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004).  Here, there are several possible relevant

14   fields.  The field may be defined as the jewelry manufacturing industry, or be circumscribed

15   more narrowly as the tungsten carbide jewelry industry or tungsten carbide rings in particular.  A

16   narrowly defined field would result in the exclusion of any references describing industrial uses

17   for tungsten carbide.  Crown has presented prior art involving industrial applications of tungsten

18   carbide, but it has not presented a factually supported argument as to why such references are

19   relevant.  Accordingly, the Court is unable to resolve the issue of the proper scope of the prior art

20   at this stage of the proceedings.

21   As to the second *Graham* finding, conflicting evidence (or a lack of any relevant

22   evidence) again precludes the Court from defining the level of ordinary skill in the art.  Relevant

23   evidence with respect to such a determination may include "1) the types of problems encountered

24   in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are

25   made; 4) the sophistication of the technology; and 5) the educational level of active workers in

26   the field."  *Ruiz*, 234 F.3d at 666-67.  Crown asserts that the Court should be able to make this

27   determination by analyzing the prior art submitted in support of its motion for summary

28   judgment.  However, the references provided hardly present sufficient guidance.  Several of the

8

1    references predate West's priority date by at least twenty-five years, and one even dates from

2    1930. Only abstracts are provided for the two Japanese references.

3        Appropriate *Graham* findings are particularly essential in the instant case because while

4    the invention appears to be relatively simple, the Court must be careful not to let hindsight cloud

5    its invalidity analysis. *Ruiz*, 234 F.3d at 664 ("The necessity of *Graham* findings is especially

6    important where the invention is less technologically complex."). Qualified expert testimony

7    would have aided the Court. Instead, Crown's position with respect to invalidity depends largely

8    on argument by its counsel, which without more is insufficient to meet its burden. *See*, *e.g.*,

9    *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1062 (S.D. Cal. 2007)

10   ("attorney arguments cannot be offered as evidence in any proceeding, and therefore this Court

11   cannot consider factual evidence that are only proffered by counsel"). In addition, West has

12   presented evidence that rebuts Crown's obviousness argument, such as the commercial success

13   of West's rings. *KSR*, 127 S. Ct. at 1730 ("secondary considerations [such as] commercial

14   success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the

15   circumstances surrounding the origin of the subject matter sought to be patented.") (citation

16   omitted). Accordingly, Crown's motion for summary judgment as to invalidity will be denied.[8]

17       C. Inequitable Conduct

18       A patent may be found to be unenforceable due to inequitable conduct if the patentee

19   intentionally fails to disclose material information to the USPTO during prosecution. *Digital*

20   *Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006). "Inequitable

21   conduct is equitable in nature and the trial court has the obligation to resolve the underlying facts

22   of materiality and intent." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1110 (Fed. Cir.

23   2003). At least a threshold showing for each element must be proven by clear and convincing

24   evidence. *Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 2009 WL 691322, at *6 (Fed.

25   Cir. Mar. 18, 2009). A greater showing of one factor will allow a lesser showing with respect to

26

27       [8] This ruling is without prejudice to Crown raising an invalidity argument at trial, and the
     Court makes no any comment with respect to whether the prior art presented by Crown could be
28   combined to invalidate the patents-in-suit.

9

the other.  *Id*.  Because of the underlying factual determinations, summary judgment rarely is granted with respect to a defense of inequitable conduct.  *Digital Control*, 437 F.3d at 1313 ("Determining at summary judgment that a patent is unenforceable for inequitable conduct is permissible, but uncommon.").

Crown contends that West should have listed Dr. McKinnon as a co-inventor because it was Dr. McKinnon who conceived of the formula for the tungsten carbide alloy rings.[9]  It is undisputed that Dr. McKinnon provided West with several tungsten carbide alloy formulations (and tungsten alloy ring blanks for testing) during the relevant time period.  During his deposition, Dr. McKinnon made the following statements:

> Q:  So did you provide Mr. West with the formula that you were using for the tungsten carbide?
>
> A: At some point, yes, I did, and I think when he was developing his patent and trying to put down some ranges, I gave him some advice on ranges.
>
> ***
>
> A: I mean [West] did not tell me to put two percentage [sic] chrome carbide in it.  He did not tell me to put cobalt in it.  I came up with a formulation that I wanted to use that I thought would work for his application, would satisfy a lot of the needs he had that I thought would work.

Trojan Decl. Ex. 5 at 60, 73.  Moreover, West admitted during his own deposition that he did not conceive of the exact tungsten carbide formula for his rings:

> Q:  Did Mr. MacKinnon ever send you any materials?
>
> A:  General Carbide sent me materials.
>
> Q:  What kind of materials?
>
> A:  Tungsten carbide blanks.

---

[9] Crown still has not pled inequitable conduct with particularity.  "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity."  *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003).  Currently, the operative counterclaim merely alleges that "Crown Ring claims that the U.S. Patent No. 6,928,734 is unenforceable as a result of inequitable conduct committed by West or his representatives before the U.S.P.T.O."  Counter-Compl. ¶ 13.  Crown has never sought leave to amend its counterclaims.  In an attempt to avoid this deficiency, Crown argues that West has been "notified" of these allegations based on Dr. McKinnon's deposition testimony.  Such an argument should be made in a motion to amend the complaint.

10

*** 

Q:  Did General Carbide already have the formulation for the tungsten carbide or did you provide it to them?

A:  They had the formulation.

***

Q:  At any time in 1997 did you provide a formula to a company that provided you with blanks?

A:  No.

***

Q:  Did you ever experiment with forming blanks using different formulations that you developed?

A:  No, I did not.

***

Q:  What is different about the formulations described in your patent applications compared to the formulas that were actually used in the sample blanks that General Carbide provided to you?

A:  Minutia.

Q:  Minutia?

A:  Yes. All tungsten carbide is similar. It's just very small formulas that are varied.

*Id*. Ex. 12 at 93-94, 98-100, 105, 109.  Crown contends that the testimony of Dr. McKinnon and West is consistent with respect to Dr. McKinnon's significant role in the conception of the West's tungsten carbide rings, and because his role clearly was that of a co-inventor, West's failure to disclose Dr. McKinnon's involvement to the USPTO was a material omission.  Crown asserts further that West's statements under oath during prosecution attesting that he was the sole inventor demonstrate that he intentionally deceived the USPTO.

Inventorship is a question of law, and after a patent issues there is a presumption that the named inventors are the correct and only inventors.  *See Ethicon, Inc. v. U.S. Surgical Corp*., 135 F.3d 1456, 1460 (Fed. Cir. 1998).  "Because '[c]onception is the touchstone of inventorship,' each joint inventor must generally contribute to the conception of the invention."  *Id.* (quoting *Burroughs Wellcome Co. v. Barr Lab., Inc*., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).  Thus, a person who merely assists the inventor after conception is not entitled to co-inventor status.  *See id. See also Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) ("An inventor 'may use the services, ideas and aid of others in the process of perfecting his

11

1    invention without losing his right to a patent.'") (citation omitted).

2        From the evidence provided to the Court, it appears that Dr. McKinnon does not qualify

3    as an inventor.  Dr. McKinnon's expertise lies in the industrial applications for tungsten carbide,

4    and West contacted Dr. McKinnon, after West had conceived of the idea to make tungsten

5    carbide jewelry rings, in order to determine an ideal formulation for a tungsten carbide alloy

6    suitable for use in a jewelry ring.  *See* Trojan Ex. 5 at 60 ("when I did find out it was [for]

7    rings…").  West informed Dr. McKinnon of the ideal characteristics of such rings (*i.e.*, not too

8    brittle but resistant to deformation), and Dr. McKinnon eventually arrived at a formulation that

9    was disclosed in the specification of the patents-in-suit.  But this formulation was dependent on

10   West's feedback.  *See id.* at 64 ("Mr. West had the responsibility of taking those blanks,

11   grinding, polishing, and deciding himself whether or not they met his expectations, so he had

12   said, no, I don't like it, it's too hard. it's too soft, it's too brittle, we would have done something

13   else.").

14       The fact that Dr. McKinnon designed the formula for the rings does not make him an

15   inventor because he did so only at West's direction, after West had conceived of the invention.

16   *See Ethicon*, 135 F.3d at 1460 ("One who simply provides the inventor with well-known

17   principles or explains the state of the art without ever having 'a firm and definite idea' of the

18   claimed combination as a whole does not qualify as a joint inventor.").  Dr. McKinnon's

19   declaration supports this conclusion:

> Mr. West provided me with the material and design specifications
> he required for making the tungsten carbide preforms.  The grade
> of tungsten carbide that I added to General Carbide's inventory,
> GC-N129, was based on Mr. West's specifications, and I do not
> consider myself to be the inventor of that grade. I have reviewed
> Mr. West's patents, including their claims, and do not believe that I
> should have been named as an inventor of any of the subject matter
> which Mr. West has claimed.

McKinnon Decl. ¶ 26.  In addition, while the formula suggested by Dr. McKinnon appears in the

specification of the patents-in-suit, "one of ordinary skill in the art who simply reduced the

inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses

that embodiment to satisfy the best mode requirement." *Ethicon*, 135 F.3d at 1460.  If the Court

12

1    were to adopt Crown's position, arguably anyone who helped West finish the blanks into

2    rings—such as machine shop employees—should have been named as co-inventors.  Such a

3    conclusion is contrary to the established laws of inventorship.  *See Shatterproof Glass*, 758 F.2d

4    at 624.  Accordingly, the Court will deny Crown's motion with respect to inequitable conduct.[10]

5         D.  Burden-shifting

6         Normally, the patentee has the burden of proof with respect to infringement.  *See*

7    *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d

8    1356, 1359 (2000).  When alleged infringement is based upon the importation of a product made

9    through a patented process, § 295 allows a court to shift the burden of proof to the alleged

10   infringer if (1) there is a substantial likelihood that the product is made by the patented process

11   and (2) the plaintiff has committed reasonable efforts to determine the process actually used but

12   is unable to determine how the product is made.  35 U.S.C. § 295.  A district court may rule on a

13   § 295 motion at any stage of the proceedings.  *See Nutrinova*, 224 F.3d at 1360.

14        This is not the first time that West has brought a motion pursuant to § 295.  Early in the

15   instant litigation, in connection with his motion for a preliminary injunction, West argued that the

16   burden of proof should be shifted because (1) Crown's jewelry rings were tungsten-alloy based

17   and (2) Crown had not responded to any of West's letter inquiries.  The Court denied the motion

18   under both prongs of § 295.  The mere fact that the accused rings and the claimed invention both

19   were made of tungsten was insufficient to satisfy the first prong of § 295.  *West v. Jewelry*

20   *Innovations Inc.*, No. C 07-1812 , 2007 WL 2070327, at *4 (N.D. Cal. July 17, 2007) ("Plaintiff

21   has offered no evidence demonstrating the specific composition of Defendants' rings or to the

22   process by which the rings were made.").  In addition, at that early stage of the case, West had

23   not performed any discovery.  *Id.* at *5 ("Plaintiffs failure to pursue any discovery in this case or

24   to provide any tests or evidence of infringement is fatal to the instant motion.").  Now, however,

25   West has presented evidence that appears to satisfy the requirements of § 295.  Based on the

26

27        [10] Even if the Court were to conclude that Dr. McKinnon should have been included in
     West's patent applications as a named inventor (and such an omission would have been
28   material), the Court still finds that there is conflicting evidence as to intent.

13

1  Chung declaration submitted in support of his motion for summary judgment, West argues that

2  there is a substantial likelihood that Crown's rings are made using the methods claimed in the

3  '734, '314 and '736 patents.  West also claims that he has exhausted all reasonable efforts to

4  determine the processes employed by or on behalf to manufacture the accused rings.

5          In response, Crown contends that West must show that the accused manufacturing

6  process is the only commercially practical method of manufacture, citing *Aventis*

7  *Pharmaceuticals, Inc. v. Barr Labs., Inc*. 411 F. Supp. 2d 490 (D.N.J. 2006).  In *Aventis*, the

8  district court denied a § 295 motion on the ground that the patentee failed to satisfy the first

9  prong of § 295.  The district court discussed the legislative history of the statute, noting that to

10 demonstrate a substantial likelihood of infringement the "patentee might show that the patented

11 process was the only known method, or the only commercially practical method, for producing

12 the product, or that physical evidence…" *Aventis*, 411 F. Supp. 2d at 510 (quoting S. Rep. No.

13 100-83, at 45 (1987)).  However, this does not mean that the patentee *must* show that the accused

14 manufacturing process is the only known method; rather, such a showing is one form of evidence

15 that would satisfy its § 295 burden.  For example additional circumstantial evidence may include

16 the chemical composition of the product itself.  *Id*. at 510 (citing H.R. Rep. No. 100-60, at 17

17 (1987)).  To demonstrate substantial likelihood of infringement, the patentee need only present

18 evidence that would support a reasonable conclusion that the imported product was made by the

19 patented process.  *See also* S. Rep. No. 100-83, at 45 ("the patentee's burden would be less than

20 that of proving successfully at trial by a fair preponderance of the evidence that a product in

21 question was in fact made by the patented process but would be more than a slight possibility that

22 the product was so made.").

23         Here, the Chung declaration provides sufficient circumstantial evidence for West to meet

24 his burden of demonstrating that there is a substantial likelihood that Crown's ring blanks are

25 made by the claimed methods.[11]  Unlike the accused infringer in *Aventis*, Crown has not

26 _____

27 [11] While the Chung declaration is insufficient under the Federal Rules of Evidence to
   prove certain material facts relating to infringement, the Court finds that it is sufficient to show

28 that there is a "substantial likelihood" that Shenli practices the claimed methods of manufacture.

14

presented rebuttal expert testimony to refute this conclusion.[12]  In addition, the chemical composition of the ring is consistent with the claimed methods.  Finally, at oral argument Crown offered no explanation as to why it had not produced any evidence regarding the manufacturing processes employed by its Chinese supplier.  *See* Hr'g Tr. at 9, Mar. 23, 2009.  Crown's inaction further supports a conclusion that burden-shifting pursuant to § 295 is appropriate.  *See Nutrinova*, 224 F.3d at 1359 ("The statute also has a significant punitive element.  It provides the trial court with a potent weapon to use against a non-cooperative defendant.").[13]

### III.  ORDER

Good cause therefor appearing, the parties' cross-motions for summary judgment are DENIED, and the motion by West to shift the burden of proof with respect to infringement is GRANTED.

DATED:  April 14, 2009

_____
JEREMY FOGEL
United States District Judge

_____

[12] Crown cites certain excerpts from Dr. McKinnon's deposition that indicate that other methods of manufacture may be employed, but Crown did not qualify Dr. McKinnon as an expert.  In addition, Dr. McKinnon is familiar with industrial applications for tungsten carbide, rather than uses for tungsten carbide in the jewelry industry.

[13] Crown also argues that West has not expended "reasonable" efforts to determine the method of manufacture employed by Shenli.  In contrast to West's previous motion, prior to which West merely sent a few letters to Shenli, the Court now has a detailed declaration from a witness West sent to China.  Curiously, Crown argues that West has the means to perform further investigation, as evidenced by the Chung declaration, but then argues that such testimony must be excluded.  Crown cannot have it both ways.

Case No. C 07-1812 JF (HRL)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC1)

1   This Order has been served upon the following persons:

2   Andrew H Stone     astone@joneswaldo.com

3   Anne W Kuykendall     akuykendall@flk.com

4   Brent T. Winder     bwinder@joneswaldo.com

5   Brett D. Ekins     bekins@joneswaldo.com, lcheney@joneswaldo.com

6   Edward Vincent King , Jr.     evking@kingandkelleher.com, alindsay@kingandkelleher.com,
    lana@kingandkelleher.com
7
    Michael F. Kelleher     mkelleher@flk.com
8
    Raymond Joseph Trojan     trojan@trojanlawoffices.com, crucillo@trojanlawoffices.com,
9   kim@trojanlawoffices.com, speier@trojanlawoffices.com, Trojanlaw@aol.com

10  Northstar Diamond, Inc.
    Sellar Hazard Manning Ficenec & Lai
11  1800 Sutter Street, Suite 460
    Concord, CA 94520
12
    Smadar Dahan
13  Crownring Inc.
    8290 St. Laurent Boulevard
14  Montreal, Canada

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16